IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00583

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1. REAL PROPERTY LOCATED AT 760 WEST BEAVER CREEK BOULEVARD, APT 111, AVON, COLORADO;
2. REAL PROPERTY LOCATED AT 35 LOWER WOODBRIDGE ROAD, #P157, SNOWMASS VILLAGE, COLORADO;
3. REAL PROPERTY LOCATED AT 35 UPPER WOODBRIDGE ROAD, #17AB, SNOWMASS VILLAGE, COLORADO;
4. REAL PROPERTY LOCATED AT 254 WREN COURT, #204, BASALT, COLORADO;
5. REAL PROPERTY AND ALL APPURTENANCES, ATTACHMENTS, AND FURNISHINGS THERETO LOCATED AT 6997 TREMOLITE DRIVE, CASTLE ROCK, COLORADO;
6. REAL PROPERTY LOCATED AT 2208 ELK LANE, BASALT, COLORADO;
7. 2021 FORD BRONCO, VIN: 1FMEE5DP9MLA90163;
8. 2022 CHEVROLET CORVETTE STINGRAY CONVERTIBLE, VIN: 1G1YB3D47N5121476;
9. 2022 PORSCHE TAYCAN SEDAN, VIN: WPOAA2Y18NSA16701;
10. 2023 CADILLAC ESCALADE, VIN: 1GYS4FKL1PR523454;
11. CRYPTOCURRENCY HELD IN COINBASE ACCOUNT 594304c17d0b3d025a5ff785;
12. CRYPTOCURRENCY AND NFTS HELD IN ADDRESS 0xAD71a7c34de9C27224386DAf370Ad4BdE7f7575D;
13. CRYPTOCURRENCY AND NFTS HELD IN ADDRESS 0xbd08Bdea67fDB84dE8223513F70D9b9bE3C30580;
14. 2021 YAMAHA RAPTOR MODEL NUMBER YFM09RYXLW;
15. MISCELLANEOUS PAINTINGS LISTED IN ATTACHMENT A;
16. MISCELLANEOUS HERITAGE VINTAGE SPORT AUCTIONS ITEMS LISTED IN ATTACHMENT B;
17. APPROXIMATELY $242,962.96 IN FUNDS FROM ALPINE BANK ACCOUNT 8911911837; and
18. APPROXIMATELY $24,384.41 IN FUNDS FROM ALPINE BANK ACCOUNT 8911911951.

       Defendants.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, ("United States") by and through United States Attorney Cole Finegan and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

<u>JURISDICTION AND VENUE</u>

1.     The United States has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), seeking forfeiture of the defendant property based upon violations of 18 U.S.C. § 1343, 18 U.S.C. § 1956, and 18 U.S.C. § 1957.  This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2.     Venue is proper under 28 U.S.C. § 1355(b), as the acts described herein occurred in the District of Colorado.

<u>DEFENDANT PROPERTY</u>

3.     Defendant property is more fully described as follows:

a.     Real Property Located at 760 West Beaver Creek Boulevard, Apt 111, Avon, Colorado 81620 ("Defendant 760 W. Beaver Creek"), which is more fully described as follows: Condominium Unit 111, Stone Creek Condominiums, according to the Plat recorded December 31, 1980 in Book 315 at Page 644 and as described in the Condominium Declaration recorded August 1, 1980 in Book 306 at Page 403, County of Eagle, State of Colorado.

Defendant 760 W. Beaver Creek was purchased on November 15, 2021 for $655,000.00, is titled in the name of Joshua Lybolt, and upon information and belief is

encumbered with a Deed of Trust in the principal amount of $524,000.00 for Specialized Loan Servicing, LLC.

   b. Real Property Located at 35 Lower Woodbridge Road, #P157, Snowmass Village, Colorado 81615 ("Defendant 35 Lower Woodbridge Road"), which is more fully described as follows: CONDOMINIUM UNIT 157, BUILDING P, as shown on the Supplemental Condominium Map for SEASONS 4, appearing in the records of the County Clerk and Recorder of Pitkin County Colorado, in Plat Book 4 at Page 219, and as defined and described in the Condominium Declaration for Seasons 4, appearing in such records in Book 256 at Page 230 as Reception No. 146257, as supplemented by First Supplemental Declaration to Seasons 4, appearing in such records in Book 279 at Page 955 as Reception No. 162526.

Defendant 35 Lower Woodbridge Road was purchased on March 4, 2022, for $950,000.00, is titled in the name of PRIME JMXE LLC, and upon information and belief is encumbered with a Deed of Trust in the principal amount of $745,000.00 for Capital Fund I, LLC.

   c. Real Property Located at 35 Upper Woodbridge Road, #17AB, Snowmass Village, Colorado 81615 ("Defendant 35 Upper Woodbridge Road"), which is more fully described as follows: CONDOMINIUM UNIT 17-AB, BUILDING 17, THE INNS OF COURT CONDOMINIUM NUMBER 17-18, ACCORDING TO THE CONDOMINIUM MAP THEREOF RECORDED AUGUST 22, 1972 IN PLAT BOOK 4 AT PAGE 278 AND ACCORDING TO THE DECLARATION OF

COVENANTS, CONDITIONS AND RESTRICTIONS ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP RECORDED AUGUST 4, 1972 IN BOOK 265 AT PAGE 635 AND RE-RECORDED AUGUST 17, 1972 IN BOOK 266 AT PAGE 5 AND ACCORDING TO THE CONDOMINIUM DECLARATION FOR INNS OF COURT CONDOMINIUM NUMBER 17-18 RECORDED AUGUST 22, 1972 IN BOOK 266 AT PAGE 139, COUNTY OF PITKIN, STATE OF COLORADO.

Defendant 35 Upper Woodbridge Road was purchased on June 8, 2022 for $1,069,000.00, is titled in the name of PRIME JMXE LLC, and upon information and belief is encumbered with a Deed of Trust in the principal amount of $860,600.00 for Selene Finance LP.

d.      Real Property Located at 254 Wren Court, #204, Basalt, Colorado 81621 ("Defendant 254 Wren Court"), which is more fully described as follows: TOWNHOUSE UNIT 204, THE COLUMBINES AT ELK RUN, SECOND FILING, ACCORDING TO THE PLAT THEREOF RECORDED OCTOBER 22, 1987, IN PLAT BOOK 20 AT PAGE 16. COUNTY OF PITKIN, STATE OF COLORADO.

Defendant 254 Wren Court was purchased on August 15, 2023, for $970,000.00, is titled in the name of PRIME JMXE LLC and upon information and belief is encumbered with a Deed of Trust in the principal amount of $860,000.00 for Capital Fund I, LLC.

e.      Real Property Located at 6997 Tremolite Drive, Castle Rock, Colorado 80108 ("Defendant 6997 Tremolite Drive"), which is more fully described as follows: Lot 5, Block 16, Maher Ranch – Filing No. 2, County of Douglas, State

of Colorado.

Defendant 6997 Tremolite Drive was purchased September 11, 2023, for $2,120,000.00, is titled in the name of Joshua Lybolt, and upon information and belief is encumbered with a Deed of Trust in the principal amount of $1,782,000.00 for Planet Home Lending, LLC.

      f.     Real Property Located at 2208 Elk Lane, Basalt, Colorado 81621 ("Defendant 2208 Elk Lane"), which is more fully described as follows: CONDOMINIUM UNIT NO. 2208, THE VILLAS AT ELK RUN, ACCORDING TO THE CONDOMINIUM DECLARATION FOR THE VILLAS AT ELK RUN RECORDED DECEMBER 12, 1994 IN BOOK 769 AT PAGE 118 AND THE COMDOMINIUM MAP FOR THE VILLAS AT ELK RUN RECORDED  JULY 31,1995 IN PLAT BOOK 37 AT PAGE 78.

Defendant 2208 Elk Lane was purchased October 27, 2023, for $550,000.00, is titled in the name of PRIME JMXE LLC, and upon information and belief is encumbered with a Deed of Trust in the principal amount of $509,000.00 for Capital Fund I, LLC.

      g.  2021 Ford Bronco, VIN: 1FMEE5DP9MLA90163

Defendant 2021 Ford Bronco, VIN: 1FMEE5DP9MLA90163 ("Defendant 2021 Ford Bronco") was purchased on approximately December 9, 2021, with an initial payment of $2,000, is registered to Joshua Lybolt, and upon information and belief is encumbered with a loan from Wells Fargo Auto.

      h.  2022 Chevrolet Corvette Stingray Convertible, VIN: 1G1YB3D47N5121476

Defendant 2022 Chevrolet Corvette Stingray Convertible, VIN: 1G1YB3D47N5121476 ("Defendant 2022 Chevrolet Convertible") was purchased on May 16, 2022, for approximately $115,204.84, is registered to Joshua David Lybolt, and upon information and belief is encumbered with a loan from GM Financial.

i.   2022 Porsche Taycan Sedan, VIN: WPOAA2Y18NSA16701

Defendant 2022 Porsche Taycan Sedan, VIN: WPOAA2Y18NSA16701 ("Defendant 2022 Porsche Sedan") was purchased on August 17, 2022, for approximately $104,000.00, is registered to Joshua Lybolt, and upon information and belief is encumbered with a loan from Capital One Auto.

j.   2023 Cadillac Escalade, VIN: 1GYS4FKL1PR523454

Defendant 2023 Cadillac Escalade, VIN: 1GYS4FKL1PR523454 ("Defendant 2023 Cadillac Escalade") was purchased on approximately October 26, 2023, is registered to Joshua Lybolt and Prime JMXE, LLC, and upon information and belief is encumbered with a loan from TD Bank.

k.   Cryptocurrency held in Coinbase Address Account 594304c17d0b3d025a5ff785

Defendant Cryptocurrency held in Coinbase Account 594304c17d0b3d025a5ff785 ("Defendant Coinbase Account ending in f785") in the name of Joshua Lybolt has not been seized and is not in the custody of the United States.

l.   Cryptocurrency and NFTs held in Address 0xAD71a7c34de9C27224386Daf370Ad4BdE7f7575D

Defendant Cryptocurrency and NFTS held in Address 0xAD71a7c34de9C27224386Daf370Ad4BdE7f7575D ("Defendant Cryptocurrency at Address ending in 575D") controlled by Joshua Lybolt has not been seized and is not in the custody of the United States.

      m. Cryptocurrency and NFTs held in Address

          0xbd08Bdea67fDB84dE8223513F70D9b9bE3C30580

Defendant Cryptocurrency and NFTS held in Address 0xbd08Bdea67fDB84dE8223513F70D9b9bE3C30580 ("Defendant Cryptocurrency at Address ending in 0580") controlled by Joshua Lybolt has not been seized and is not in the custody of the United States.

      n. 2021 Yamaha Raptor Model Number YFM09RYXLW

Defendant 2021 Yamaha Raptor Model Number YFM09RYXLW ("Defendant 2021 Yamaha Raptor") was purchased by Joshua Lybolt on October 9, 2020 for approximately $4,197.85 from Tri City Cycle at 3675 Clydesdale Parkway in Loveland, Colorado.

      o. Miscellaneous Paintings Listed in Attachment A

Paintings by Straus Topher titled, "Vail," "Kirkjufell Iceland," "Fresh Tracks," "Peaks," Special Edition "Aspen Lights," and Special Edition "Crystal Haze" ("Defendant Six Straus Topher Paintings") were purchased by Joshua and Magdalena Lybolt for a collective total of $30,697.34.

Paintings by Tracy Felix titled "Aspen Mountain" and "Peaceful Lake" ("Defendant Two Tracy Felix Paintings") were purchased by Joshua Lybolt for a total of $9,711.00 from the Raitman Art Gallery in Vail, Colorado.

A painting by Craig Alan Titled, "Marlyn" ("Defendant Craig Alan Painting") was purchased by Joshua Lybolt on February 11, 2022, for $9,750.00 from Royal Street Fine Art in Aspen, Colorado.

Paintings by Josh Agle, also known as Shag, Titled "Million Dollar View," "The Mammoth Martini," and "86 in the Shade" ("Defendant Three Josh Agle Paintings") were purchased by Joshua Lybolt from The Shag Store in Palm Springs, California for a combined total of $8,400.00.

Painting by Steve Barton Titled, "Blue Moon" ("Defendant Steve Barton Painting") was purchased by Joshua Lybolt from the Holle Fine Art Gallery in Lahaina, Hawaii for $2,768.80.

Two Southwest Mixed Media Paintings Purchased at Carre d' Artist Art Gallery ("Defendant Two Southwest Carre d' Artist Paintings") were purchased by Joshua Lybolt on May 9, 2022, from the Carre d'Artist Art Gallery in Sedona, Arizona for $1,976.16.

      p.  Miscellaneous Heritage Vintage Sport Auctions Items Listed in Attachment B

Defendant Miscellaneous Heritage Vintage Sport Auctions Items listed in Attachment B ("Defendant Heritage Auction Items") were purchased in 18 transactions

made by Joshua Lybolt between April 1, 2022 through March 23, 2023 totaling $61,228.20.

     q.  Approximately $242,962.96 in Funds from Alpine Bank Account 8911911837

Defendant Approximately $242,962.96 in Funds from Alpine Bank Account 8911911837 ("Defendant Approximately $242,962.96 from Alpine Bank Account 1837") is a collective total of two currency amounts seized by law enforcement.  On November 16, 2023, law enforcement officers seized $242,635.08 from Alpine Bank account ending in 1837.  In January of 2024, an additional $327.88 was seized by law enforcement as a result of an account refund.  Defendant Approximately $242,962.96 from Alpine Bank Account 1837 is the collective total of both amounts.  Alpine Bank account ending in 1837 is in the name of Prime JMXE, LLC.  The funds are currently being held by the United States Marshals Service in Denver, Colorado.

     r.  Approximately $24,384.41 in Funds from Alpine Bank Account 8911911951

Defendant Approximately $24,384.41 in Funds from Alpine Bank Account 8911911951 ("Defendant Approximately $24,384.41 from Alpine Bank Account 1951") was seized on November 16, 2023.  Alpine Bank account ending in 1951 is in the names of Joshua Lybolt and Magdalena Lybolt.  The funds are currently being held by the United States Marshals Service in Denver, Colorado.

<u>FACTUAL BASIS FOR FORFEITURE</u>

Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

### BACKGROUND OF SMALL BUSINESS ADMINISTRATION
### ECONOMIC INJURY DISASTER LOANS AND GRANTS

4.      On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which, among other things, provided emergency assistance to small business owners affected by the COVID-19 pandemic through the U.S. Small Business Administration (SBA).  Two sources of funding for small businesses were the Economic Injury Disaster Loan (EIDL) program and the Paycheck Protection Program (PPP).  The CARES Act mandated that only businesses in operation before February 1, 2020, were eligible for the EIDL program and that only businesses in operation on February 15, 2020, were eligible for PPP loans.

5.      The EIDL program provided low-interest financing to small businesses in regions affected by declared disasters.  The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic.  Small businesses could receive loans of up to $2 million, with the possible maximum loan amounts changing over time, and they were permitted to use these funds for working capital to make regular payments for operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses.

6.      In order to obtain an EIDL, a qualifying business was required to submit an EIDL application to the SBA via the SBA's online website and provide information about its operations, such as the number of employees and the entity's gross business revenues

and cost of goods sold in the twelve months prior to January 31, 2020. Use of the SBA's online website required the applicant to use some type of computer or mobile device to submit the application. The amount of the loan, if approved, was determined in part based on the information provided concerning the business's gross revenue and cost of goods sold.

7.     The CARES Act also authorized EIDL Advances as well as loans. The EIDL Advance did not require any business documentation and could be approved within 1-3 days.  Under the EIDL Advance program, applicants could receive $1,000 per employee, up to $10,000.

8.     The CARES Act legislation also authorized up to $349 billion in forgivable loans to small businesses to pay their employees during the pandemic.

9.     On or around April 2020, Congress authorized up to $310 billion of additional funding.  This loan program was known as the PPP and was administered by the SBA.  The PPP loan was based on payroll costs for a set period. The borrower was required to provide payroll documentation to justify the payroll records.

10.     PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The SBA allowed the PPP loan to be entirely forgiven if the business used a certain percentage of the PPP loan proceeds on payroll expenses. Under the PPP, the maximum loan amount for which an applicant could apply was the lesser of $10 million or an amount based upon a payroll-based formula specified in the CARES Act.

11.     Small businesses and sole proprietorships applied for PPP relief through

over 4,900 SBA designated lending institutions.  To apply, applicants were required to complete and transmit to the lender, an SBA Form 2483 or the lender's equivalent, which required the applicant to identify the entity's average payroll, as calculated according to the requirements of the CARES Act.  The applicants also had to make several certifications, including that PPP loan proceeds were to be used for business-related expenses consistent with the PPP rules and regulations.

12.    Once a borrower submitted their application to the lender, the lender underwrote the loan, and transmitted the application data to the SBA via an electronic platform known as ETRAN. Before a lender submitted PPP loan application data through ETRAN, the lender had to have collect the information and certifications set forth in the SBA Form 2483.  Loans under the PPP were 100% guaranteed by the SBA, and the full principal amount of the loans could qualify for loan forgiveness.

## SUMMARY OF INVESTIGATION AND BANKRUPTCY PROCEEDINGS

13.    In 2023, the Federal Bureau of Investigation began an investigation into PPP and EIDL loans obtained by businesses associated with an individual identified as Joshua Lybolt (Lybolt).

14.    Joshua Lybolt resides in Colorado.

15.    Lybolt and his wife, Magdalena Lybolt (Magdalena) (collectively, the Lybolts) filed for Chapter 7 Bankruptcy on January 20, 2020, and reported the following:

     a.    Within the bankruptcy filing, Lybolt reported income of $0 in 2018, $72,448 in 2019, and $2,500 in 2020 up to the date of the bankruptcy filing.

b.      Magdalena reported $0 income for 2018, 2019, and 2020 up to the date of the bankruptcy filing.

c.      At a March 3, 2020, bankruptcy hearing, Magdalena told the U.S. Bankruptcy Trustee, under oath, that she was unemployed. Lybolt said he was self-employed.

d.      According to the documentation submitted to the Trustee, Lybolt was driving for Uber and Lyft to earn money in January 2020.

e.      Lybolt and Magdalena also told the Trustee, under oath, that all of the businesses included in their bankruptcy filing documentation were closed and no longer operational. Among these closed businesses were Broker Life LLC, JMXE Capital LLC, Lifstyl Real Estate LLC, A Prime Real Estate Corporation LLC, and Commissions Fast LLC.

f.      The Lybolts further told the Trustee, while still under oath, that all of the information included in the bankruptcy filing was true and correct.

g.      On April 27, 2020, the bankruptcy was granted and $4,655,229.49 in debt was discharged.

16.     Beginning on approximately April 1, 2020—while the bankruptcy was still ongoing and less than a month after telling the Trustee, under oath, that the businesses were closed—Lybolt began submitting EIDL applications representing that these same businesses remained in operation.

17.     Lybolt ultimately submitted six EIDL applications and one PPP application and obtained at least $4,994,267.00 in COVID relief funds.

18.     To support the revenues and expenses reported in the EIDL applications, Lybolt filed 2019 tax returns with the Internal Revenue Service for Broker Life LLC, JMXE Capital LLC, Lifstyl Real Estate LLC, and A Prime Real Estate Corporation LLC.

19.     The Lybolts' 2019 tax return reported a combined personal income of $282,482 for Lybolt and Magdalena based on the K-1s from the four businesses mentioned above.  This was almost four times the amount of income claimed in the bankruptcy filing.

20.     The Lybolts did not have to pay any taxes on the earnings they reported on their 2019 tax return because of the combined net loss the businesses had reported in 2018 that the Lybolts carried forward and applied to their 2019 personal tax return.

21.     2019 was the only year all four of the entities reported income in tax filings.

22.     Lybolt perpetrated a scheme to obtain PPP and EIDL loan proceeds by submitting PPP and EIDL applications that contained misstatements for businesses that Lybolt admitted, under oath, were closed as of March 3, 2020, and that he further filed fraudulent tax returns to further and conceal his scheme. Lybolt then diverted the fraudulently obtained EIDL loan proceeds to his personal accounts.

### Lifstyl Real Estate LLC

23.     Lifstyl Real Estate LLC (Lifstyl) was registered with the Colorado Secretary of State on August 1, 2018.

24.     According to Lifstyl's 2019, 2020, and 2021 tax returns, the principal

business activity was real estate sales. The tax returns showed that Lybolt had a 50% ownership interest and that Magdalena had a 50% ownership interest in the business.

25.     Within the Statement of Financial Affairs filed as part of the Lybolts' bankruptcy, the Lybolts listed Lifstyl as existing from August 1, 2018, through the date of the bankruptcy filing, January 20, 2020.  The Statement of Financial Affairs also listed "Real Estate Brokerage" as the nature of the business.

26.     The Lybolts listed a number of businesses within their petition for bankruptcy and statement of financial affairs, including Lifstyl, that they said under oath were closed during the March 3, 2020, bankruptcy hearing.

### Lifstyl EIDL Loan

27.     On April 6, 2020, Lybolt submitted an EIDL application for Lifstyl, less than a month after stating under oath that this business was closed.

28.     The SBA funded the loan for $150,000 on or about July 6, 2020, and a $2,000 EIDL Advance was funded on or about May 8, 2020.

29.     On the EIDL application, Lybolt stated that he had 50% ownership and that Magdalena had 50% ownership, that there were two employees, and that the business activity was real estate and property management.

30.     Lybolt reported $2,400,692 in Gross Revenues and $2,422,032 in Cost of Goods Sold for 2019.

31.     Lybolt certified "under penalty of perjury" that the information submitted on his EIDL application was "true and correct."

32.     The SBA initially declined the application because the Cost of Goods Sold

exceeded the Gross Revenues.

33.     Lybolt requested reconsideration and on June 17, 2020, submitted additional documentation, certifying under penalty of perjury, that the Gross Revenues for the 12 months prior to the disaster were now $1,703,868 and Cost of Goods Sold was now zero.

34.     Additionally, Lybolt submitted a new Profit and Loss Statement showing Total Sales Revenue for 2019 as $1,703,868 and Operating Expenses of $1,662,175. The profit and loss statement was dated June 16, 2020, and appeared to be signed by Lybolt.

35.     On the EIDL application, Lybolt listed two employees as of January 31, 2020, and received an EIDL Advance of $2,000, $1,000 for each employee. However, per Lifstyl's 2019 Tax Return, it did not incur any Salaries or Wages expenses. The profit and loss statement submitted to SBA by Lybolt for 2019 did not include a salary or wage expense category in the general and administrative operating expenses, and based on the bankruptcy filing and proceedings, Magdalena was unemployed.

36.     Lybolt provided the SBA a signed Board Resolution for Lifstyl dated December 1, 2020, in which he, as the "president and sole owner of Lifstyl Real Estate, LLC," agreed to obtain an EIDL loan by the SBA. The claim to be the "sole owner" of Lifstyl did not match the EIDL application where Lybolt listed his ownership as 50% and Magdalena's ownership as 50%. The 2019 and 2020 tax returns for Lifstyl, also, listed Lybolt as only having a 50% ownership interest.

37.     On April 24, 2021, Lybolt submitted a loan modification request to seek an

increase to $500,000.

38.     In Lybolt's correspondence with the SBA related to the modification request, Lybolt reiterated that Lifstyl was a real estate brokerage company that earned commissions and marketing revenue from real estate transactions and did not own real estate assets. The Colorado Department of Regulatory Agencies, Division of Real Estate, did not have a record of Lybolt, Magdalena, or Lifstyl being registered as a real estate broker/brokerage in Colorado.

39.     Lybolt also submitted an SBA Form 2202 Schedule of Liabilities as part of the documentation for the modification for Lifstyl. The SBA Form 2202 that Lybolt submitted for Lifstyl actually lists A Prime Real Estate Corporation, LLC as the applicant, not Lifstyl, and is the exact same form and information that Lybolt submitted as part of the EIDL application process for A Prime Real Estate Corporation LLC.

40.     The modification was initially denied, but eventually funded for $350,000 on or about February 12, 2022. Both Lybolt and Magdalena signed the loan agreement.

41.     On February 23, 2022, less than two weeks after receiving the initial modification, Lybolt submitted a second modification request. The SBA told Lybolt that Lifstyl had currently received the maximum loan amount based on a cash flow analysis and that if Lybolt wanted to add outside income to the cash flow analysis, he would need to provide his 2019 personal tax return.

42.     On March 2, 2022, the SBA received the Lybolts' personal tax return that was filed in March 2021 after all of the Lybolts' initial EIDL and PPP applications had been filed.

43.     The Lybolts' 2019 jointly filed tax return showed $282,482 in income from their four partnerships (Broker Life LLC, JMXE Capital LLC, Lifstyl, A Prime Real Estate Corporation LLC) and an additional $12,500 in wages. The combined income from the four partnerships and the reported wages on the tax return was $294,982, which was over four times the income reported for 2019 in the bankruptcy petition filed by the Lybolts in January 2020. The Lybolts reported only $72,448 in income for 2019 from wages, commissions, bonuses, tips and operating a business according to the bankruptcy filing.

44.     On March 6, 2022, the second modification was funded for $210,000. Both Lybolt and Magdalena signed the loan agreement.

45.     On March 17, 2022, less than two weeks after receiving the second modification, Lybolt applied for a third loan modification.

46.     On March 18, 2022, the SBA contacted Lybolt requesting that Lybolt send additional income for 2019.

47.     Lybolt provided the SBA with a W-2 from Broker Life LLC for 2021. The W-2 listed Lybolt as the employee of Broker Life LLC and $91,000 as the wages.

48.     Lybolt also provided the SBA with a W-2 from JMXE Capital LLC for 2021. That W-2 also listed Lybolt as the employee of JMXE Capital LLC and $57,500 in wages.

49.     The combined total of $148,500 was then included in the SBA's cash flow analysis to determine Lifstyl's ability to repay the requested increased loan amount.

50.     On April 4, 2022, the third modification was funded for $1,290,000. Both Lybolt and Magdalena signed the loan agreement.

51.     The income amounts listed on the W-2s Lybolt supplied as support for the

additional income were not included in the Lybolts' 2021 jointly filed tax return that was filed in June 2022 after Lybolt submitted the W-2s to the SBA. The Lybolts claimed zero in wages and salaries on their 2021 tax return.

52.     The Colorado Department of Labor and Employment did not have any record of state wage earnings for Lybolt in 2021. It also did not have any records of Broker Life LLC or JMXE Capital LLC paying wages to any employees in Colorado.

53.      Neither Broker Life LLC nor JMXE Capital LLC listed expenses matching the wages reported on the W-2s on their 2021, respective, tax returns; in fact, both companies reported zero expenses associated with salaries and wages for 2021.

54.     In total, Lybolt received $2,001,900 in SBA EIDL and EIDL Advance proceeds for Lifestyl.[1]

## JMXE Capital LLC

55.     JMXE Capital, LLC (JMXE Capital) was registered with the Indiana Secretary of State on July 7, 2016.

56.     According to the Indiana Secretary of State, JMXE Capital status was Inactive / Admin Dissolved on January 5, 2019.

57.     JMXE Capital, LLC was then incorporated with the Colorado Secretary of State on August 19, 2019, though JMXE Capital's 2019 tax return stated the business was established June 1, 2019.

58.     According to JMXE Capital's 2019, 2020, and 2021 tax returns, the principal

---

[1] For loans greater than $25,000, the SBA withheld a $100 fee from the total loan amount for filing a UCC-1 lien on the borrower's business assets.

business activity was real estate and internet marketing. The tax returns showed that Lybolt had a 90% ownership interest and that Magdalena had a 10% ownership interest in the business.

59.     In the Statement of Financial Affairs filed as part of the Lybolts' bankruptcy, the Lybolts listed JMXE Capital as existing from August 19, 2019, through the date of the filing. The Lybolts listed a number of businesses within their petition for bankruptcy and statement of financial affairs, including JMXE Capital, which they stated were closed while under oath at the March 3, 2020, bankruptcy hearing.

### JMXE Capital LLC EIDL

60.     On June 17, 2020, Lybolt submitted an EIDL application for JMXE Capital. The loan was funded for $124,600 on or about July 27, 2020.

61.     On the EIDL application, Lybolt stated that he had 100% ownership, there was one employee, the business was opened on August 18, 2019, and that JMXE Capital's industry was Finance.

62.     Lybolt reported $251,171 in Gross Revenues and $0 in Cost of Goods Sold for 2019. Lybolt certified "under penalty of perjury" that the information submitted on his EIDL application was "true and correct."

63.     JMXE Capital's 2019 tax returns stated that the principal business activity was Real Estate and Internet Marketing, not Finance. On the affiliated business listing provided by Lybolt as part of the Broker Life LLC PPP application, Lybolt listed "Marketing Services" as the industry for JMXE Capital. However, based on the SBA notes related to the EIDL application, Lybolt initially represented to the SBA that the business was a broker

for lenders.

64.    Then later on in the EIDL loan modification notes, Lybolt says "JMXE Capital LLC is a marketing company providing internet marketing services to the financial services industry." Open-source research showed that the website jmxecapital.com was created on or around March 6, 2020, not in 2019.

65.    The website as of October 30, 2021, only had two links, one labeled "Investors" which resolved to angelist.com and the other labeled "Consumers" which resolved to smartbizloans.com. There was no mention of internet marketing services.

66.     The SBA notes also showed that the SBA sent an email requesting the tax return for JMXE Capital on July 20, 2020, and a follow up email on July 22, 2020, noting that the tax return was due by July 27, 2020, for the EIDL application process to continue.

67.    JMXE Capital's 2019 tax return was filed on July 24, 2020. The tax return showed that Lybolt had only 90% ownership interest in the business, not the 100% Lybolt claimed in the EIDL application. The 2019 tax return also showed the Gross Receipts as $251,459, which did not match the 2019 Gross Revenues listed on the EIDL application.

68.    JMXE Capital's 2019 tax return reported significant income for a partial year of operation in comparison to subsequent years with a full 12 months of operations. As JMXE Capital was started mid-way through 2019, there was no 2018 tax return for the company when the SBA pulled the tax transcripts.

69.    In 2019, JMXE Capital reported $251,459 in Gross Revenues and $240,558 in deductions to arrive at an Ordinary Business Income of $10,901. The largest expense was "Legal and Professional" at $237,601. There were no marketing expenses listed for

a business that has a principal business activity of internet marketing.

70.     JMXE Capital's 2020 tax return reported $10,043 in Gross Receipts. The deductions for 2020 were $8,942 to arrive at an Ordinary Business Income of $826. The largest expense was again "Legal and Professional" at $8,514 and then marketing at $428.

71.     In 2021, JMXE Capital reported $29,117 in Gross Receipts and $331,895 in deductions to arrive at an Ordinary Business Loss of $302,778.

72.     The largest expenses were "Legal and Professional" at $132,447, "Depreciation" at $72,500, "Outside Services" at $57,750, and "Marketing" at $35,959.

73.     According to JMXE Capital's tax returns, in the five months of operation in 2019, when the company did not have a website, the internet marketing company made over six times the amount of Gross Receipts received in 2020 and 2021 combined.

74.     According to the tax returns, JMXE Capital also incurred over twice as much in expenses as Gross Revenues between 2019 - 2021 with a total of $581,670 in expenses, 65% of which were "Legal and Professional" and only 6% were "Marketing" for a company whose primary business purpose is marketing.

75.     Lybolt provided the SBA a signed Board Resolution for JMXE Capital dated December 1, 2020, in which he, as the "president and sole owner of JMXE Capital, LLC," agreed to obtain an EIDL loan. This was the same date as the letter signed for the Lifstyl EIDL application. JMXE Capital's 2020 tax return, just like the 2019 tax return, listed Lybolt as having only a 90% ownership interest and Magdalena having a 10% interest, making Lybolt not the sole owner.

76.     On April 24, 2021, Lybolt submitted a loan modification request to seek an increase to $500,000.

77.     Lybolt provided the SBA with an SBA Resolution and Certification dated July 22, 2021, showing that the increase to $500,000 was authorized. Magdalena is listed as a member under the officers / owner's section.

78.     The request was approved on or around August 4, 2021, and the additional $375,400 was funded on or about August 17, 2021.

79.     On September 30, 2021, Lybolt submitted a second loan modification request to seek an increase to $1,111,100. The modification request was denied for lack of ability to repay.

80.     Lybolt sent a letter to the SBA dated October 25, 2021, with the subject line: EIDL Loan Reconsideration for SBA Disaster Loan #8813708101. In the letter, Lybolt noted that he amended his personal financial statement to include an additional other household income of $10,000 monthly.

81.     To demonstrate the ability to make the monthly payments for the requested loan increase, Lybolt listed $251,459 as JMXE Capital's 2019 income (which matched the 2019 Gross Revenues on the modification application but did not match the 2019 Gross Revenues on the original EIDL application), $120,000 in personal income, and $120,000 in other income to arrive at a total monthly income of $40,954 that would be available to pay for personal liabilities and the increased monthly EIDL payment.

82.     According to Lybolt's letter, if the loan increase was granted, the monthly payment would change from $2,525 to $5,129. Lybolt utilized the $251,459 in Gross

Revenues from 2019 in his calculation of funds available to make payments on the increased EIDL. However, per JMXE Capital's tax returns the Gross Receipts for 2020 were $10,043 and for 2021 were $29,117, which were significant decreases from 2019 and would impact the business's ability to make monthly payments on an increased loan amount. Neither the Gross Receipts for 2020 nor 2021 would be enough to cover the stated current monthly payment of $2,525.

83.     Additionally, Lybolt claimed $120,000 in personal income, which according to his personal financial statement submitted to the SBA was "salary." The additional other household income of $120,000, Lybolt said was his wife's annual income.

84.     The Lybolts did not report salaries or wages of $120,000 for either individual on their 2020 or 2021 jointly filed tax returns, but they did report unemployment compensation of $35,809 in 2020.

85.     In 2020, the Lybolts also reported $826 in income from their four partnerships, $496,705 in losses from their four partnerships, and then several other loss amounts.

86.     In 2021, the Lybolts reported no income from their four partnerships, $495,636 in losses from their four partnerships, a capital loss and only $60 in taxable interest.

87.     Neither the 2020 or 2021 tax returns for the Lybolts indicated that Lybolt or Magdalena were receiving $120,000 in salaries or income, and none of the Lybolts' K-1s indicated that they had received guaranteed payments from the partnerships. Additionally, a search of the Colorado Department of Labor and Employment records

24

revealed no wages being paid to Lybolt or Magdalena for employment in Colorado.

88.     Lybolt sent another letter to request reconsideration. This letter dated February 8, 2022, included JMXE Capital's 2019 Gross Revenues, the $120,000 in personal income, $120,000 other income and $48,000 in real estate rental income. The modification request was still denied.

89.     In total, Lybolt received $499,900.00 in SBA EIDL and EIDL Advance proceeds for JMXE Capital LLC.

## A Prime Real Estate Corporation LLC

90.     A Prime Real Estate Corporation, LLC (Prime Real Estate) was registered with the Indiana Secretary of State on April 25, 2005. Prime Real Estate's status with the Indiana Secretary of State went inactive on March 11, 2020.

91.     Lybolt did not re-incorporate Prime Real Estate in Colorado until June 17, 2020.

92.     According to Prime Real Estate's 2019, 2020, and 2021 tax returns, the principal business activity was real estate sales. The tax returns showed that Lybolt had a 99% ownership interest, and that Magdalena had a 1% ownership interest in the business.

93.     Within the Statement of Financial Affairs filed as part of their bankruptcy, the Lybolts listed Prime Real Estate as existing from August 1, 2005, through the date of the bankruptcy filing, January 20, 2020, and the nature of the business as "Real Estate." The Lybolts listed a number of businesses within their petition for bankruptcy and Statement of Financial Affairs, including Prime Real Estate.

94.     On March 3, 2020, when the Chapter 7 U.S. Trustee asked the Lybolts if any of the LLCs were still operating, Lybolt, under oath, said "Not any longer" and Magdalena said "No."

### Prime Real Estate EIDL Loan

95.     On April 1, 2020, Lybolt submitted an EIDL application for Prime Real Estate.

96.     The loan was funded for $500,000 on or about December 19, 2021.

97.     On the EIDL application, Lybolt stated that he had 100% ownership, that there were two employees, and that the business activity was real estate and property management.

98.     Lybolt reported $2,653,443 in Gross Revenues and $2,897,396 in Cost of Goods Sold for the 12 months preceding January 31, 2020. Lybolt certified "under penalty of perjury" that the information submitted on his EIDL application was "true and correct."

99.     The SBA initially declined the application because the Cost of Goods Sold exceeded the Gross Revenues.

100.    On December 30, 2020, Lybolt submitted another EIDL application for Prime Real Estate.

101.    On the second EIDL application, Lybolt now claimed $2,290,647 in Gross Revenues and zero in Cost of Goods Sold for the exact same time period as the prior application for Prime Real Estate, the 12 months preceding January 31, 2020.

102.     Lybolt now claimed only 99% ownership and only one employee as of January 31, 2020, instead of 100% ownership and the initial two employees claimed on

the original application. Lybolt again certified under penalty of perjury that information included in this new application was true and correct.

103.    This second application was initially declined because the Colorado Secretary of State records showed the business had been formed too recently (on June 17, 2020). Lybolt requested reconsideration and stated in a letter dated March 16, 2021, Prime Real Estate "was originally formed and operated in Indiana until 2020 at which time, we closed our Indiana offices… and relocated our operations to… Colorado."

104.    However, Lybolt stated under oath on March 3, 2020, that all of his businesses were closed, which would have included Prime Real Estate.

105.    Additional evidence suggests Prime Real Estate was actually closed in 2019.  Lybolt had previously received two SBA Express Loans for Prime Real Estate, one issued in March 2015 for $200,000 and one issued in February 2016 for $150,000. The loans were issued by Peoples Bank but guaranteed, in portion, by the SBA.

106.    Lybolt stopped making payments on the loans on or around June 2019.

107.    In December 2020, Peoples Bank requested that the SBA purchase the guaranteed portion of the two loans.

108.    In the request that Peoples Bank sent, Prime Real Estate was noted as closed. The request stated that Prime Real Estate was a real estate brokerage company and that one of the factors causing the loan default was "mismanagement by the owner," which caused agents to leave the company and go work for competitors. This led to inadequate cash flow and the company closing.

109.    Peoples Bank conducted a site visit on October 2, 2019, for the two leased

locations of Prime Real Estate, which included the main office in Crown Point, Indiana and a second office in Schererville, Indiana.

110.    According to the report, both business locations were closed, unoccupied and most of the furniture, fixtures, and equipment had been cleared out. The report noted that "clearly the guarantor [Lybolt] removed items of value and left some miscellaneous items." The bank had to get access from the landlord to even enter the offices.

111.    Peoples Bank also conducted a site visit of the Lybolts' residence at 9571 West 89th Ave, St. John, IN in late October 2019. The house was vacant, the utilities were still on, but most of the personal property was removed.

112.    The report noted that Lybolt had initially been cooperative and then stopped responding to the bank and moved out of state to Colorado.

113.    Prime Real Estate's real estate brokerage company license was suspended by the Indiana Real Estate Commission effective November 13, 2019.

114.    The Colorado Department of Regulatory Agencies, Division of Real Estate, did not have a record of Prime Real Estate being registered as real estate broker company in Colorado.

115.    On March 20, 2021, the SBA processed an email from Lybolt with supporting documents for the Prime Real Estate loan, including an SBA Form 3502 and his 2019 1065 Business Tax Return.

116.    The SBA Form 3502 Lybolt submitted to support his reconsideration, stated the Gross Revenues for Prime Real Estate for the 12 months preceding the disaster was now $1,924,533 and zero dollars in Cost of Goods Sold.

117.    The tax return provided by Lybolt was just the first page of Prime Real Estate's 2019 1065, which was dated February 27, 2021, by the tax preparer and per the tax preparer's records was filed on February 28, 2021.

118.    However, when the SBA requested the full 1065 tax return, Lybolt provided a 1065 tax return that was dated March 23, 2021.

119.    This second application was then flagged by the SBA as a duplicate of the initial application and was not funded. The initial application was then reconsidered.

120.    On November 30, 2021, the SBA processed an SBA Form 413 Personal Financial Statement for Lybolt in support of this application. Lybolt claimed a salary of $120,000 on the form, which is not supported Lybolt's personal 2020 or 2021 tax returns.

121.    Lybolt also claimed $48,000 in real estate income, which was not supported by the financial investigation to date of Lybolt's personal and business bank accounts.

122.    The form also lists Other Income of $120,000 described as additional income derived from business.

123.    Lybolt's personal tax return for 2020 did not show $120,000 in income from any of his business, but rather, according to his K-1s, a net loss of $426,854.

124.    His 2021 personal tax return did not show $120,000 in income from any of his businesses, instead just $379,777 in losses according to his K-1s. The Colorado Department of Labor and Employment has no records of Lybolt or Magdalena receiving wages for employment in Colorado.

125.    SBA funded the EIDL for Prime Real Estate on or about December 19,

2021, for $500,000.[2]

126.    On December 30, 2021, Lybolt submitted a loan modification request. The modification was funded on or about January 13, 2022, for $1,500,000.00.

127.    In total, Lybolt received $1,999,900.00 in SBA EIDL and EIDL Advance proceeds for Prime Real Estate.

## Broker Life, LLC

128.    Broker Life, LLC (Broker Life) was registered with the Indiana Secretary of State on February 13, 2016.

129.    According to Broker Life's 2019, 2020, and 2021 tax returns, the principal business activity was consulting and real estate. The tax returns showed that Lybolt had a 50% ownership interest and that Magdalena also had a 50% ownership interest in the business.

130.    Within Form 107 Statement of Financial Affairs for Individuals Filing for Bankruptcy (Statement of Financial Affairs), the Lybolts listed Broker Life as existing from February 13, 2016 through December 31, 2018.

## Broker Life PPP Loan

131.    On March 1, 2021, Lybolt signed a promissory note for a PPP loan for Broker Life from Customers Bank.

132.    Lybolt listed his ownership as 50% on the application and Magdalena's ownership as 50%.

---

[2] For loans greater than $25,000, the SBA withheld a $100 fee from the total loan amount for filing a UCC-1 lien on the borrower's business assets.

133.   The application claimed zero employees. The application also listed an average monthly payroll of $16,667, which would equate to approximately $200,000 in payroll annually.

134.   The loan was approved and loan #2515388509 was funded for $41,667.

135.   Lybolt signed the Borrower's Closing Certification, in which he represented that the "Borrower was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC."

136.   On the PPP Borrower Application Form signed by Lybolt on March 1, 2021, the authorized representative of the Applicant was required to certify the following statement by initialing next to it: "The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC."  Lybolt's initials "JL" appeared next to this statement indicating that Broker Life was in operation on February 15, 2020.

137.   However, according to the Lybolts' petition for bankruptcy and Statement of Financial Affairs filed on January 20, 2020, Broker Life was not in existence after December 31, 2018, and therefore, was not in operation on February 15, 2020. Lybolt told the Trustee, under oath, that information in the voluntary petition, Statement of Financial Affairs, and schedules filed with the bankruptcy court was true and correct and

that the businesses were closed.

138.    The Lybolts filed Statements under penalty of perjury concerning Payment Advices (Payment Advices) with the United States Bankruptcy Court for the District of Colorado as part of the bankruptcy filing.

139.    Magdalena's Payment Advices, signed and dated January 15, 2020, stated that Magdalena was not employed by others or self-employed, during the period immediately preceding the filing of the bankruptcy petition. She reiterated, under oath, to the Trustee that she was unemployed.

140.    According to the Statement of Financial Affairs, Magdalena reported zero income from employment or from operating a business during 2018, 2019 and 2020 up to the date of the bankruptcy filing.

141.    The information Magdalena reported in the bankruptcy filings and proceedings did not match the information submitted in the PPP application nor Magdalena's 2019 K-1 from Broker Life, which reported $115,800 in Ordinary Business Income.

142.    Lybolt's Payment Advices signed and dated January 15, 2020, stated that he was self-employed. Lybolt reported zero income from employment or from operating a business during 2018, $72,448 in 2019, and $2,500 for 2020 up to the date of the bankruptcy filing on the Statement of Financial Affairs.[3]

143.    The Lybolts did not report any other income received during 2018, 2019 and 2020 up to the bankruptcy filing date on the Statement of Financial Affairs. Lybolt's

---

[3] The amounts Lybolt reported may include income amounts that were received jointly.

reported income of $72,448 on the Statement of Financial Affairs that he had certified under oath as true and correct, did not match the information submitted in the PPP application nor Lybolt's 2019 K-1 for Broker Life, which reported $115,800 in Ordinary Business Income.

144.    Broker Life's 2019 tax return included with its PPP application was filed on July 9, 2020, and reported $240,000 in Gross Revenues. The only expense included on the tax return was $8,400 for bank charges, resulting in Ordinary Business Income of $231,600.

145.    The K-1 statements for Lybolt and Magdalena both report $115,800 in Ordinary Business Income, which qualified them under the PPP to receive the maximum loan amount available to a company with two individuals on the payroll. However, the combined reported Ordinary Business Income of $231,600 was more than three times the amount of income reported for 2019 within the bankruptcy filing documentation.

146.    In addition to the petition for bankruptcy that stated that Broker Life ceased to exist as of December 31, 2018, Lybolt's admission under oath that his businesses were closed, and to the income discrepancies between the bankruptcy filings and PPP application packet, Broker Life's 2019 tax return showed significantly fewer expenses than subsequent years.

147.    The Lybolts, the only two partners of Broker Life, did not report any business income or losses or include any K-1s associated with Broker Life in their 2017 or 2018 personal tax returns.

148.    There was no 2018 tax return found for Broker Life when the SBA pulled

the tax transcripts. However, in 2019, Broker Life reported $240,000 in Gross Revenues and only $8,400 in deductions, described as bank charges, to arrive at an Ordinary Business Income of $231,600.

149.    In 2020, Broker Life reported $50,000 in Gross Revenues and $110,000 in deductions to arrive at an Ordinary Business Loss of $60,841.

150.    In 2021, Broker Life reported $46,961 in Gross Revenues and $178,654 in deductions to arrive at an Ordinary Business Loss of $131,693. According to Broker Life's tax returns, 2019 was the only year that the business did not have a loss.

151.    The Lybolts reported the income on their personal tax returns in 2019, however, due to a net loss carryforward from 2018, the Lybolts had no taxable income in 2019. The only tax owed was related to self-employment tax and was netted against the refundable credits, resulting in the Lybolts receiving a tax refund of $7,242.

### Broker Life EIDL

152.    On April 3, 2020, Lybolt submitted EIDL application 3302118962 for Broker Life, a month after stating his businesses were closed in the bankruptcy proceedings and that Broker Life ceased existing on December 31, 2018.

153.    The loan was funded on or about June 11, 2020 for $114,500 and a $1,000 EIDL advanced was funded on or about June 26, 2020.

154.    On the EIDL application, Lybolt stated he had 100% ownership and that there was only one employee as of January 31, 2020. Lybolt reported $240,000 in Gross Revenues and $9,000 in Cost of Goods Sold for 2019. Lybolt certified "under penalty of perjury" that the information submitted on his EIDL application was "true and correct."

155.   However, according to Broker Life's 2019 tax returns, Lybolt only had 50% ownership interest.

156.   The 2019 tax return also showed only $8,400 in deductions, which were described as bank charges, and were not categorized as Cost of Goods Sold.

157.   Additionally, according to the bankruptcy filing, Broker Life was closed as of December 31, 2018 and therefore, would not have had any employees as of January 31, 2020.

158.   In the PPP loan application that Lybolt submitted for Broker Life in February 2021, Lybolt stated he had 50% ownership of the company and that Magdalena had 50% ownership, not the 100% claimed on the EIDL application.

159.   Lybolt claimed zero employees on the PPP loan application, but sought the maximum funding amount for two individuals, not one as listed on the EIDL application.

160.   Lybolt provided the SBA with a signed Board Resolution for Broker Life dated December 1, 2020, in which he, as the "president and sole owner of Broker Life, LLC" agreed to obtain an EIDL loan. In the letter, Lybolt stated he was the "sole board member of Broker Life, LLC." Broker Life's 2020 tax return, just like the 2019 tax return, listed Lybolt as only having a 50% ownership interest.

161.   On April 24, 2021, Lybolt submitted a loan modification request to seek an increase from $114,500 to $450,000.

162.   The request was approved on or around August 5, 2021, and the additional $335,500 was funded on or about August 8, 2021.

163.   As part of the modification request, Lybolt provided the Colorado Secretary

of State Articles of Incorporation for Broker Life dated June 1, 2020. The SBA reached out to Lybolt for further information as a business created in June 2020 would not qualify for the EIDL program.

164.   Based on the SBA notes included in the loan modification application, Lybolt told the SBA that Broker Life was originally started in 2016 in Indiana, but that he did not begin hosting courses and receiving revenues until early 2019.

165.   According to the January 2020 bankruptcy filing, however, Lybolt was not hosting courses for Broker Life during 2019 because Broker Life was closed as of December 31, 2018.

166.   On September 3, 2021, Lybolt submitted a second loan modification request to seek an increase from $450,000 to $500,000.

167.   On October 13, 2021, the SBA reached out to Lybolt for additional information on the ownership structure due to Broker Life's 2019 tax return showing Lybolt's ownership at 50%. Lybolt responded saying "Yes, Magdalena Lybolt is and has always been a 50/50 partner in Broker Life, LLC." Lybolt's representation to the SBA regarding Magdalena's role in Broker Life did not match Lybolt's claim of 100% ownership in the EIDL application and claim of being the sole owner represented in the Board Resolution. The SBA modified the loan application to include Magdalena, pulled Magdalena's credit report, and also updated the loan agreement to require Magdalena as a co-signer. The loan increase was not funded.

168.   Lybolt also provided an additional Board Resolution document that was signed and dated April 12, 2021. It listed Lybolt as "President, Managing Partner and 50%

owner of Broker Life, LLC." In the resolution, Lybolt and Magdalena, "the two sole members of the Board of Directors," agreed to increase Broker Life's EIDL up to $500,000. The letter was signed by both Lybolt and Magdalena.

169.    This Board Resolution document differed from the one Lybolt submitted to the SBA in December 2020, where Lybolt claimed to be the "sole owner" of Broker Life, even though Broker Life's Tax Returns for 2019, 2020, and 2021 all showed Lybolt as only ever having 50% ownership interest.

170.    In total, Lybolt received $492,567.00 in proceeds from SBA EIDL, EIDL Advance, and PPP programs for Broker Life.

## REPRESENTATIONS ABOUT SPENDING OF LOAN PROCEEDS

171.    In total, Lybolt received at least $4,994,267.00 in loans and Advances related to the PPP and EIDL programs for Lifstyl, JMXE Capital, Prime Real Estate, and Broker Life, as follows:

| PPP and EIDL Deposits | | | | |
|---|---|---|---|---|
| Business | Type of Loan | Bank Account | Posted Date | Amount |
| Lifestyl Real Estate | EIDL Advance | Bank of America 7469 | 5/1/2020 | $        2,000.00 |
| Broker Life | EIDL | Bank of America 3503 | 6/12/2020 | $    114,400.00 |
| Broker Life | EIDL Advance | Bank of America 3503 | 6/26/2020 | $        1,000.00 |
| Lifestyl Real Estate | Initial EIDL Loan | Bank of America 7469 | 7/8/2020 | $    149,900.00 |
| JMXE Capital | EIDL | Bank of America 6183 | 7/29/2020 | $    124,500.00 |
| Broker Life | PPP Loan | Bank of America 3503 | 3/4/2021 | $      41,667.00 |

| | | | | | |
|---|---|---|---|---|---|
| Broker Life | 1st EIDL Modification | Bank of America 3503 | 8/10/2021 | $ | 335,500.00 |
| JMXE Capital | 1st EIDL Modification | Bank of America 6183 | 8/10/2021 | $ | 375,400.00 |
| A Prime Real Estate | EIDL | Bank of America 8536 | 12/21/2021 | $ | 499,900.00 |
| A Prime Real Estate | 1st EIDL Modification | Bank of America 8536 | 1/18/2022 | $ | 1,500,000.00 |
| Lifestyl Real Estate | 1st EIDL Modification | Bank of America 7469 | 2/15/2022 | $ | 350,000.00 |
| Lifestyl Real Estate | 2nd EIDL Modification | Bank of America 7469 | 3/8/2022 | $ | 210,000.00 |
| Lifestyl Real Estate | 3rd EIDL Modification | Bank of America 7469 | 4/6/2022 | $ | 1,290,000.00 |
| | **Total** | | | $ | 4,994,267.00 |

172.   Lybolt received all of these PPP, EIDL, and EIDL advance funds even though he stated under oath that the businesses for which these funds were received were closed.

173.   The loan agreements for both the PPP and EIDL programs describe the allowable uses of the proceeds.

174.   The PPP agreement that Lybolt signed for Broker Life stated that: "Borrower will… Use all loan proceeds to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules." Lybolt also checked boxes on the PPP application that he intended to use loan proceeds for Payroll Costs, Rent / Mortgage Interest, Utilities, and Covered Operations Expenditures, despite representing in bankruptcy filings that Broker Life was closed as of December 31, 2018.

175.    In each EIDL agreement signed by Lybolt or Lybolt and Magdalena, the borrower agreed to use loan proceeds "solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020."  Yet according to the Lybolts' admissions on March 3, 2020, Broker Life LLC, JMXE Capital LLC, Lifstyl, and Prime Real Estate were all closed.

176.    In each EIDL agreement signed by Lybolt or Lybolt and Magdalena, the borrower also agreed to not make any distribution or advance, directly or indirectly, to any owner or partner, or to other companies, including those controlled by any owner or partner of the borrower.

177.    The financial investigation to date has shown that a significant portion of the funds went to fund a new business, Prime JMXE LLC that was incorporated in Colorado on January 3, 2022.

## FINANCIAL INVESTIGATION

### *Facilitating Bank of America Account 7469 in the name of Lifstyl Real Estate*

178.    Bank of America Account 1391 0143 7469 ("Bank of America Account 7469") in the name of Lifstyl Real Estate was opened October 28, 2019, the sole signer was Joshua Lybolt. The balance in the account the day before the first EIDL was funded was $5.15.

179.    A financial review was performed on Bank of America Account 7469 in the name of Lifstyl Real Estate from October 28, 2019 through January 9, 2023.

180.    From January 1, 2020 through May 1, 2020, there were four deposits, totaling $377.35 into Bank of America Account 7469.

181.    The analysis revealed that approximately $2,001,900.00 was deposited into Bank of America Account 7469 from EIDL Advance and loan disbursements as follows:

    a.    Approximately $2,000.00 on or about May 1, 2020 (EIDL Advance);

    b.    Approximately $149,900.00 on or about July 8, 2020 (Initial Loan, a $100 UCC fee was withheld from the loan disbursement amount);

    c.    Approximately $350,000.00 on or about February 15, 2022 (First Loan Modification);

    d.    Approximately $210,000.00 on or about March 8, 2022 (Second Loan Modification); and

    e.    Approximately $1,290,000.00 on or about April 6, 2022 (Third Loan Modification).

182.    The only other source of funds deposited into this account during the review period of January 1, 2020, through January 31, 2023, were approximately $469,104.35 from online transfers from other Bank of America accounts in the custody and control of Joshua Lybolt.

183.    The account did not appear to receive any business-related income.

184.    From approximately January 1, 2020, through January 31, 2023, there were approximately $1,423,900.01 of withdrawals, (not to include online transfers), made from Bank of America Account 7469 to include three significant withdrawals for the purchase of three separate parcels of real estate as follows:

    a.    On approximately May 27, 2022, $530,397.50 was wired to Title Company of the Rockies for the purchase of 1061 West Beaver

Creek Boulevard, N202, Avon, Colorado. This property was used as a short-term rental property until it was sold for $722,500.00 on April 17, 2023.

b.     On approximately June 8, 2022, $428,920.92 was wired to Land Title Guaranty for the purchase of Defendant 35 Upper Woodbridge Road. An open-source search shows that this property is a short-term rental property.

c.     On approximately June 30, 2022, $400,000.00 was wired to Land Title Guaranty for the purchase of 160 Nottingham Road, #A, Avon, Colorado. This property was used as a short-term rental property until it was sold for $2,105,000.00 on October 6, 2023.

185.   Based on its SBA EIDL Application and supporting tax returns, Lifstyl Real Estate LLC had been a real estate brokerage firm and had not previously held real estate for rental income.

186.   All three of the above wire transfers were funded with fraudulently obtained EIDL loan proceeds.

187.   In addition, online transfer withdrawals were approximately $1,053,467.08 made to Bank of America accounts in the custody and control of Joshua Lybolt.

188.   Bank of America Account 7469 was closed on approximately January 9, 2023.

**Facilitating Bank of America Account 3503 in the name of Broker Life**

189.   Bank of America Account 1391 0139 3503 ("Bank of America Account

3503") in the name of Broker Life was opened June 5, 2020. The sole signer was Joshua Lybolt. The balance in the account the day before the first EIDL was funded was $0.

190.   A financial review was performed on Bank of America Account 3503 from June 5, 2020, through January 3, 2023.

191.   The analysis revealed that approximately $492,567.00 was deposited into Bank of America Account 3503 from PPP and EIDLs as follows:

      a.      Approximately $114,000.00 on June 12, 2020 (Initial Loan, a $100 UCC fee was withheld from the loan disbursement amount).

      b.      Approximately $1,000.00 on June 26, 2020.

      c.      Approximately $41,667.00 from Customer's Bank for a PPP loan on March 4, 2021.

      d.      Approximately $335,500.00 on August 10, 2021.

192.   The only other significant source of funds deposited into this account were from online transfers from other Bank of America accounts in the amount of $66,070.00. These online transfers were made from Bank of America accounts in the custody and control of Joshua Lybolt.

193.   From approximately June 5, 2020, through January 3, 2023, there were approximately $562,846.50 of withdrawals (including $410,637.50 in withdrawal transfers to other Bank of America accounts controlled by Joshua Lybolt) made from Bank of America Account 3503.

194.   Bank of America Account 3503 was closed on approximately January 3, 2023.

***Facilitating Bank of America Account 8536 in the name of A Prime Real Estate LLC***

195.   Bank of America Account 1391 0165 8536 ("Bank of America Account 8536") in the name of A Prime Real Estate LLC was opened on January 19, 2021. The account was opened for approximately one year before the first EIDL was funded into the account; however, only ten deposits, totaling $1,690.16, were transacted prior to the first EIDL loan deposit.

196.   A financial review was performed on Bank of America Account 8536 from January 21, 2021, through January 9, 2023.

*197.*   The analysis revealed that approximately $1,999,900.00 was deposited into Bank of America Account 8536 from EIDLs as follows:

>   e.   Approximately $499,900.00 on December 21, 2021, (Initial Loan, a $100 UCC filing fee was withheld from the loan disbursement amount); and

>   f.   Approximately $1,500,000.00 on January 18, 2022 (First Loan Modification).

198.   The only other source of funds deposited into this account were from online transfers from other Bank of America accounts in the amount of $637,190.00. These online transfers were made from Bank of America accounts in the custody and control of Joshua Lybolt.

199.   The account did not receive any business-related income.

200.   From approximately January 1, 2021, through January 9, 2023, there were approximately $40,653.01 of withdrawals (not to include online transfer withdrawals)

made from Bank of America Account 8536.

201.    From approximately January 1, 2021, through January 9, 2023, there were approximately $2,596,947.35 of online transfer withdrawals to other Bank of America accounts in the custody and control of Joshua Lybolt.

202.    One online withdrawal transfer of importance from Bank of America Account 8536 was on January 24, 2022, in the amount of $1,950,000.00 to Bank of America Account 6718 in the name of Prime JMXE. This online bank transfer was solely funded by the fraudulent EIDL proceeds listed above.

203.    Bank of America Account 8536 was closed on approximately January 9, 2023.

**Facilitating Bank of America Account 6183 in the name of JMXE Capital**

204.    Bank of America Account 1391 0149 6183 ("Bank of America Account 6183") in the name of JMXE Capital was opened on June 19, 2020. The sole signer on Bank of America Account 6183 was Joshua Lybolt.

205.    A review of Bank of America Account 6183 revealed that the first deposit into Bank of America Account 6183 was the EIDL SBA loan of $124,500.00 that was requested on June 17, 2020 for JMXE Capital LLC. The funds were deposited on July 29, 2020. On April 24, 2021, Lybolt submitted a loan modification request to seek a loan increase to $500,000.00. The request was approved on August 4, 2021, and on August 10, 2021, Bank of America Account 6183 received $375,400.00 from the EIDL SBA loan. The balance of Bank of America Account 6183 prior to the deposit of the second SBA EIDL loan was $1,240.29.

206.   From August 10, 2021, to February 28, 2023, Bank of America Account 6183 received a total of $576,071.03 in deposits, including the loan of $375,400.00 and $191,500.00 in account transfers from Bank of America accounts in the custody and control of Joshua Lybolt.

207.   On August 20, 2021, a total of $334,362.95 was transferred from Bank of America Account 6183 to Bank of America Account 0610. From August 20, 2021, to October 14, 2021, the only deposits into Bank of America Account 6183 were transfers from Bank of America Account 0610.

208.   On October 14, 2021, Bank of America Account 6183 received a transfer of $50,000.00 from Bank of America Account 0610. On the same day, $50,000.00 was sent to Land Title Guarantee Company for the earnest money deposit towards the purchase of Defendant 760 W. Beaver Creek.

209.   From January 5, 2022, to January 3, 2023, there were a total of $22,200.00 in payments to Change Home Mortgage, and a total of $21,820.17 in payments to Specialized Loan Servicing for mortgage payments towards Defendant 760 W. Beaver Creek.

210.   On approximately January 18, 2023, Bank of America Account 6183 was closed.

### *Facilitating Bank of American Account 6718 in the name of Prime JMXE*

211.   Bank of America Account 1391 0460 6718 ("Bank of America Account 6718") in the name of Prime JMXE was opened on approximately January 6, 2022. The sole signer on Bank of America Account 6718 was Joshua Lybolt.

212.   On January 24, 2022, Bank of America Account 6718 received a transfer of $1,950,000.00 from Bank of America Account 8536. The account balance prior to the transfer of $1,950,000.00 was $100.  As stated above, Bank of America Account 8536 had received approximately $1,999,900.00 in EIDL funds issued on behalf of Prime Real Estate LLC.

213.   Bank of America Account 6718 received a total of $2,852,027.73 in deposits, including the transfer of $1,950,000.00 from Bank of America Account 8536. Other significant sources of deposits include:

    a.   A total of $115,000.00 in transfers from Bank of America Account 7469.

    b.   On approximately October 5, 2022, Bank of America Account 6718 received a wire of $721,824.71 from Homestead Title and Escrow for the financing of Defendant 35 Lower Woodbridge Road. As described below, the property was originally purchased without financing using the SBA EIDL proceeds that were transferred from Bank of America Account 8536 on January 24, 2022.

    c.   A total of $15,852.72 in short term rental income from Airbnb for renting out properties that were purchased using the fraudulently obtained SBA EIDL loans.

214.   From January 6, 2022, through December 27, 2022, there were approximately $1,960,105.05 of withdrawals, (not to include online transfers), made from Bank of America Account 6718, to include the following significant withdrawals for the

purchase of several parcels of real estate:

      a.      On February 14, 2022, approximately $47,500.00 was wired from Bank of America Account 6718 to Land Title Guarantee Company for the earnest money deposit on Defendant 35 Lower Woodbridge Road. On March 3, 2022, an additional $902,803.84 was wired to Land Title Guarantee Company for the purchase of Defendant 35 Lower Woodbridge Road.

      b.      On April 18, 2022, approximately $50,000.00 was wired from Bank of America Account 6718 to Title Company of the Rockies for the deposit on 1061 West Beaver Creek Boulevard, #202, Avon, Colorado.

      c.      On April 27, 2022, approximately $50,000.00 was wired from Bank of America Account 6718 to Land Title Guarantee Company for the earnest money deposit on Defendant 35 Upper Woodbridge Road.

      d.      On May 24, 2022, approximately $50,000.00 was wired from Bank of America Account 6718 to Land Title Guarantee Company for the earnest money deposit towards the purchase of 160 Nottingham Road, #A, Avon, Colorado.

      e.      On May 26, 2022, approximately $120,000.00 was wired from Bank of America Account 6718 to Title Company of the Rockies for the purchase of 1061 West Beaver Creek Boulevard, #202, Avon, Colorado.

f.     From August 5, 2022, through December 7, 2022, approximately $34,986.10 was paid to Capital Fund I for mortgage payments on 160 Nottingham Road, #A, Avon, Colorado and approximately $23,224.10 to Capital Fund I for mortgage payments on Defendant 35 Upper Woodbridge Road.

215.   On December 27, 2022, Bank of America Account 6718 was closed and the balance of $372,546.19 was used to open a new account, Alpine Bank Account 1837 in the name of Prime JMXE.

**Defendant Alpine Bank Account 1837 in the name of Prime JMXE LLC**

216.   On December 15, 2022, Alpine Bank Account 8911911837 ("Alpine Bank Account 1837") in the name of Prime JMXE LLC was opened with the sole signer being Joshua Lybolt. On February 16, 2023, Magdalena Lybolt was added as a signer.

217.   A financial review was conducted on Alpine Bank Account 1837 from December 15, 2022, through November 25, 2023, and revealed that there were a total of $2,585,540.91 in deposits. Significant sources of deposits into Alpine Bank Account 1837 include the following:

a.     On December 27, 2022, $372,546.19 was transferred from Bank of America Account 6718 into Alpine Bank Account 1837. The transfer consisted of proceeds from the fraudulent SBA EIDL loans that were originally deposited into Bank of America Account 8536;

b.  On January 31, 2023, Alpine Bank Account 1837 received a wire transfer of $418,304.69 from Land Title Guarantee Company for the sale of 1061 W Beaver Creek Blvd, #N202, Avon, Colorado 81620;

c.  On April 18, 2023, Alpine Bank Account 1837 received an additional $247,696.03 from Land Title Guarantee Company for the sale of 1061 W Beaver Creek Blvd, #N202, Avon, Colorado 81620;

d.  On July 17, 2023, Alpine Bank Account 1837 received a wire transfer of $203,772.39 from Timios Inc for the refinance of Defendant 35 Upper Woodbridge Road;

e.  On August 30, 2023, $303,778.61 was deposited into Alpine Bank Account 1837 from a wire transfer from Tiago Title Company for the refinance of 160 Nottingham Rd #A, Avon, Colorado;

f.  On September 15, 2023, $36,221.92 was deposited into Alpine Bank Account 1837 from a wire transfer from Land Title Guarantee as part of the closing disbursement from the purchase of Defendant 6997 Tremolite Drive;

g.  On October 10, 2023, $707,735.29 was deposited into Alpine Bank Account 1837 from a wire transfer from Land Title Guaranty for the sale of 160 Nottingham Road, #A, Avon, Colorado;

h.  A major source of deposits into this account are made up of short-term rental revenues from properties purchased with the fraudulent SBA proceeds in the amount of $169,109.12.

218.    Significant   withdrawals   from   Alpine   Bank   Account   1837   include   the
following:

a.    On February 8, 2023, approximately $25,000.00 was wire
transferred to Michael Veruchi for the earnest money deposit on the
purchase of Defendant 6997 Tremolite Drive.

b.    On July 12, 2023, approximately $48,500.00 was wire transferred
to Land Title Guarantee Company as the deposit for the purchase
of Defendant 254 Wren Court.

c.    On August 15, 2023, approximately $217,174.69 was wire
transferred to Land Title Guarantee Company for the purchase of
Defendant 254 Wren Court.

d.    On September 7, 2023, approximately 250,000.00 was wire
transferred to Land Title Guarantee towards the purchase of
Defendant 6997 Tremolite Drive.

e.    On September 8, 2023, an additional $125,000.00 was wire
transferred to Land Title Guarantee towards the purchase of
Defendant 6997 Tremolite Drive.

f.    On October 10, 2023, approximately $27,500.00 was wire
transferred to Land Title Guarantee as the earnest money deposit
for the purchase of Defendant 2208 Elk Lane.

g.  On October 25, 2023, an additional $120,000.00 was wire transferred to Land Title Guarantee towards the purchase of Defendant 2208 Elk Lane.

h.  From January 6, 2023, to October 16, 2023, Alpine Bank Account 1837 sent a total of $154,405.96 in mortgage payments for the above-mentioned properties:

i.  On approximately October 26, 2023, a check was sent to John Elway Cadillac for $25,000.00 for the downpayment on Defendant 2023 Cadillac Escalade.

219.   In November of 2023, $242,635.08 of Defendant Approximately $242,962.96 from Alpine Bank Account 1837 was seized and is currently in the custody of the United States Marshals Service.   In January of 2024, the remaining $327.88 of Defendant Approximately $242,962.96 from Alpine Bank Account 1837 was seized by law enforcement and is currently in the custody of the United States Marshals Service.

***Facilitating Bank of America Account 0610 in the name of JMXE Capital***

220.   Bank of America Account 1391 0438 0610 ("Bank of America Account 0610") in the name of JMXE Capital was opened on August 20, 2021. The sole signer on Bank of America Account 0610 was Joshua Lybolt.

221.   The first two deposits into Bank of America Account 0610 were transfers totaling $334,362.95 from Bank of America Account 6183 on August 20, 2021. This online bank transfer was solely funded by the fraudulent EIDL loan of $375,400.00 for JMXE Capital LLC that was deposited into Bank of America Account 6183 on August 10, 2021.

222.   From August 20, 2021 to March 31, 2023, there were a total of $343,150.54 in withdrawals from Bank of America Account 0610, including $180,233.34 in transfer withdrawals to other Bank of America accounts in the custody and control of Joshua Lybolt.

223.   One withdrawal of importance from Bank of America Account 0610 was a wire transfer of $100,000.00 on November 22, 2021, to Land Title Guarantee for the purchase of Defendant 760 West Beaver Creek.

224.   Bank of America Account 0610 was closed in March of 2023.

**Facilitating Bank of America Account 0720 in the name of Broker Life**

225.   Bank of America Account 1391 0438 0720 ("Bank of America Account 0720") in the name of Broker Life was opened on approximately August 20, 2021. The sole signer on Bank of America Account 0720 was Joshua Lybolt.

226.   From August 20, 2021, to January 5, 2023, Bank of America Account 0720 was primarily funded with $460,137.50 in transfers from other Bank of America accounts in the custody and control of Joshua Lybolt.

227.   From August 20, 2021, to January 5, 2023, there were approximately $460,167.61 of withdrawals made from Bank of America Account 0720, including $192,722.29 of withdrawal transfers made to other bank accounts in the custody and control of Joshua Lybolt or Magdalena Lybolt.

228.   Bank of America Account 0720 was closed on approximately January 5, 2023.

**Facilitating Bank of America Account 4710 in the name of Joshua and Magdalena Lybolt**

229.    Bank of America Account 1391 0341 4710 ("Bank of America Account 4710") in the name of Joshua and Magdalena Lybolt was opened on approximately November 19, 2019. The signers on Bank of America account 4710 were Joshua and Magdalena Lybolt.

230.    A financial review was performed on Bank of America Account 4710 from November 19, 2019, through December 28, 2022.

231.    From November 19, 2019 through December 28, 2022, Bank of America Account 4710 received a total of $892,297.38 in deposits, including $678,028.00 in transfers from bank accounts in the custody and control of Joshua Lybolt,

232.    On April 29, 2022, Bank of America Account 4710 received a total of $20,000.00 in transfers from Bank of America Account 0720 and Bank of America Account 7469. The balance of Bank America Account 4710 prior to the transfers was $50.66.

233.    On May 6, 2022, a check for $5,000.00 was sent to Scenic Chevrolet for the downpayment on the purchase of Defendant 2022 Chevrolet Convertible.

234.    On May 13, 2022, a total of $50,000.00 was transferred into Bank of America Account 4710 from other Bank of America accounts controlled by Joshua Lybolt.

235.    On May 16, 2022 a check for $40,000.00 was sent to Scenic Chevrolet for the remaining downpayment on the purchase of Defendant 2022 Chevrolet Convertible.

236.    On August 15, 2022, Bank of America Account 4710 received a transfer of $10,000.00 from Bank of America Account 7469. The balance of Bank of America Account 4710 prior to the transfer was $571.33. On August 17, 2022, Bank of America

Account 4710 received a deposit of $50,000.00 from Bank of America Account 7469. On the same day, a check for $58,000.00 was sent to Porsche Littleton for the downpayment on Defendant 2022 Porsche Sedan.

237.   From April 1, 2022, to August 2, 2022, a total of $35,449.96 was sent from Bank of America Account 4710 to Heritage Vintage for the purchase of a portion of Defendant Heritage Auction Items Listed in Attachment B.

238.   From January 5, 2022 to December 5, 2022, a total of $16,246.80 was sent from Bank of America Account 4710 to Wells Fargo for the auto loan on Defendant 2021 Ford Bronco.

239.   From June 21, 2022, to December 5, 2022, a total of $10,144.00 was sent from Bank of America Account 4710 to GM Financial for the auto loan on Defendant 2022 Chevrolet Convertible.

240.   Bank of America Account 4710 was closed on approximately December 28, 2022.

**Defendant Alpine Bank Account 1951 in the name of Joshua and Magdalena Lybolt**

241.   Alpine Bank Account 8911911951 ("Alpine Bank Account 1951") was opened on December 15, 2022, with the sole signers being Joshua and Magdalena Lybolt.

242.   A financial review was conducted on Alpine Bank Account 1951 from December 15, 2022 through November 3, 2023. The financial review revealed that Alpine Bank Account 1951 received a total of $413,950.52 in deposits, including $386,000.00 transferred in from Alpine Bank Account 1837.

243.    From December 15, 2022, to November 3, 2023, there were a total of $389,628.62 in withdrawals from Alpine Bank Account 1951. Significant withdrawals from Alpine Bank Account 1951 including the following transactions:

        a.    From January 10, 2023, to October 11, 2023, a total of $9,945.14 was sent form Alpine Bank Account 1951 to Capital One for the auto loan on Defendant 2022 Porsche Sedan.

        b.    From January 10, 2023, to July 13, 2023, a total of $7,600.00 was sent from Alpine Bank Account 1951 to GM Financial for the auto loan on Defendant 2022 Chevrolet Convertible.

        c.    On September 8, 2023, approximately $35,000.00 was wired transferred from Alpine Bank Account 1951 to Michael Vuruchi to be used towards the purchase of Defendant 6997 Tremolite Drive.

244.    In November of 2023, Defendant Approximately $24,384.41 from Alpine Bank Account 1951 was seized and is currently in the custody of the United States Marshals Service.

**DEFENDANT 760 WEST BEAVER CREEK BOULEVARD, APT 111, AVON, COLORADO**

245.    On October 14, 2021, $50,000.00 was sent to Land Title Guarantee Company from Bank of America Account 6183 for the earnest money deposit towards the purchase of Defendant 760 W. Beaver Creek. The source of the $50,000.00 earnest money deposit for Defendant 760 W. Beaver Creek is the $375,400.00 SBA EIDL loan for JMXE Capital LLC which was requested on April 24, 2021, and deposited into Bank of America 6183 on August 10, 2021.

246.    On approximately November 15, 2021, Joshua Lybolt purchased Defendant 760 W. Beaver Creek for $655,000.00. The original mortgage on the property was through Change Lending LLC in the amount of $524,000.00. The listed owner for the property is Joshua Lybolt.

247.    On approximately November 22, 2021, $100,000.00 was wire transferred from Bank of America Account 0610 to Land Title Guarantee Company for the closing of Defendant 760 W. Beaver Creek.

248.    The source of the $100,000.00 is the $375,400.00 SBA EIDL loan for JMXE Capital LLC that was originally deposited into Bank of America Account 6183, and then transferred into Bank of America Account 0610 on August 20, 2021.

249.    A review of records provided by Airbnb revealed that Defendant 760 W. Beaver Creek generated approximately $73,242.97 in revenue from June 23, 2022 to October 18, 2023.

250.    From January 5, 2022 to January 3, 2023, a total of $44,020.17 in mortgage payments were made for Defendant 760 W. Beaver Creek from Bank of America Account 6183 which was almost entirely funded by fraudulently obtained SBA loans, or other accounts held in the name of Joshua Lybolt which received fraudulently obtained SBA loans.

251.    From February 2, 2023 to October 2, 2023, a total of $30,252.96 in mortgage payments were made for Defendant 760 W. Beaver Creek from Alpine Bank Account 1837.

252.    Alpine Bank Account 1837 was primarily funded through transfers from

accounts held in the name of Joshua Lybolt that received fraudulently obtained SBA EIDL loans, the sale or refinance of properties purchased with fraudulently obtained SBA EIDL loans, and short-term rental revenue from the properties purchased with fraudulently obtained SBA EIDL loans.

253.    Accordingly, Defendant 760 W. Beaver Creek was purchased with $150,000.00 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved in money laundering.

### DEFENDANT 35 LOWER WOODBRIDGE RD, # P157, SNOWMASS VILLAGE, COLORADO

254.    On February 14, 2022, $47,500.00 was wire transferred from Bank of America Account 6718 to Land Title Guarantee Company for the earnest money deposit towards the purchase of Defendant 35 Lower Woodbridge Road.

255.    On March 3, 2022, $902,803.84 was wire transferred from Bank of America Account 6718 to Land Title Guarantee Company to complete the purchase of Defendant 35 Lower Woodbridge Road. The sale was recorded on March 4, 2022, for $950,000.00, and the property was purchased without financing. The owner is listed as PRIME JMXE LLC.

256.    The source of the funds for the purchase are the SBA EIDL loans that were originally deposited into Bank of America Account 8536, and then transferred to Bank of America Account 6718 on January 24, 2022.

257.    On October 4, 2022, Defendant 35 Lower Woodbridge Road was financed with a loan of $745,000.00 from Capital Fund I, LLC, and on October 5, 2022, $721,824.71 was wire transferred from Homestead Title and Escrow to Bank of America

Account 6718.

258.    A review of records provided by Airbnb revealed that Defendant 35 Lower Woodbridge Road generated approximately $85,590.61 in revenue from October 19, 2022 to October 16, 2023.

259.    From December 7, 2022 to August 8, 2023, a total of $58,612.86 was paid to Capital Fund I, LLC for the mortgage payments on Defendant 35 Lower Woodbridge Road from Bank of America Account 6718, and Alpine Bank Account 1837.

260.    Defendant 35 Lower Woodbridge Road was purchased with $950,303.84 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved in money laundering.

**DEFENDANT 35 UPPER WOODBRIDGE ROAD, #17AB, SNOWMASS VILLAGE, COLORADO**

261.    On April 27, 2022, $50,000.00 was wire transferred from Bank of America Account 6718 to Land Title Guarantee Company for the earnest money deposit towards the purchase of Defendant 35 Upper Woodbridge Road. The source of the funds is the $1,500,000.00 SBA EIDL loan for A Prime Real Estate LLC that was deposited into Bank of America Account 8536 on January 18, 2022, and then transferred to Bank of America Account 6718 on January 24, 2022.

262.    On June 8, 2022, $428,920.92 was wire transferred from Bank of America Account 7469 to Land Title Guarantee Company for the purchase of Defendant 35 Upper Woodbridge Road. The sale was recorded on June 8, 2022, with a purchase price of $1,069,000.00. The property was financed with a loan of $620,000.00 from Capital Fund I, LLC. The listed owner is PRIME JMXE LLC. The source of the 428,920.92

downpayment are the SBA EIDL loans made to Lifestyl Real Estate, LLC that were deposited into Bank of America Account 7469.

263.    On July 14, 2023, Defendant 35 Upper Woodbridge Road was refinanced for $860,600.00 through Paramount Bank. The net proceeds of the refinance, $203,772.39, were deposited into Alpine Bank Account 1837 on July 17, 2023. The current servicer of the loan is Selene Finance LP.

264.    A review of records provided by Airbnb revealed that Defendant 35 Upper Woodbridge Road generated approximately $30,785.14 in revenue from December 20, 2022 to October 16, 2023.

265.    From August 2, 2022 to May 9, 2023, a total of $46,448.25 was paid to Capital Fund I, LLC for the mortgage payments on Defendant 35 Upper Woodbridge Road. The payments were made from Bank of America Account 6718 and Alpine Bank Account 1837. On October 16, 2023, $7,015.45 was paid to Selene Finance LP for the first payment of the loan refinance.

266.    Defendant 35 Upper Woodbridge Road was purchased with $478,920.92 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved in money laundering.

## DEFENDANT 254 WREN COURT, #204, BASALT, COLORADO

267.    On July 12, 2023, $48,500.00 was wire transferred from Alpine Bank Account 1837 to Land Title Guarantee Company as the earnest money deposit towards the purchase of Defendant 254 Wren Court. On August 15, 2023, an additional $217,174.69 was wire transferred from Alpine Bank Account 1837 to Land Title

Guarantee Company for the purchase of Defendant 254 Wren Court. The sources of the funds used to purchase Defendant 254 Wren Court consists of a mix of short-term rental income from the properties purchased with the fraudulently obtained SBA EIDL loans, and funds from the sale or refinancing of properties that were originally purchased with the fraudulently obtained SBA EIDL loans.

268.   The sale was recorded on August 15, 2023, with a purchase price of $970,000.00. The property was financed with a loan of $860,000.00 from Capital Fund I, LLC. The listed owner of the property is PRIME JMXE LLC.

269.   Defendant 254 Wren Court was purchased with $265,674.69 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved in money laundering.

### DEFENDANT 6997 TREMOLITE DRIVE, CASTLE ROCK, COLORADO

270.   On February 8, 2023, $25,000.00 was wire transferred from Alpine Bank Account 1837 to Michael Veruchi as the earnest money deposit for the purchase of Defendant 6997 Tremolite Drive.

271.   From approximately March of 2021 until the time of the purchase, Defendant 6997 Tremolite Drive was used as the rental residence of Joshua Lybolt. From March 19, 2021, until July 11, 2023, Joshua Lybolt sent Michael Veruchi a total of $197,205.00 in rental payments.

272.   On September 7, 2023, $250,000.00 was wire transferred from Alpine Bank Account 1837 to Land Title Guarantee Company, and on September 8, 2023, an additional $125,000.00 was wire transferred from Alpine Bank Account 1837 to Land Title

Guarantee Company for the purchase of Defendant 6997 Tremolite Drive. On September 8, 2023, an additional $35,000.00 was wire transferred to Michael Veruchi from Alpine Bank Account 1951. The sale was completed on September 11, 2023, with a purchase price of $2,120,000.00. The listed owner of the property is Joshua Lybolt. The property was financed with a loan of $1,782,000.00 from Oaktree Funding Corporation and is currently serviced by Planet Home Lending.

273.    The source of the funds used to purchase Defendant 6997 Tremolite Drive consists of a mix of short-term rental income from the properties purchased with the fraudulently obtained SBA EIDL loans, and funds from the sale or refinancing of properties that were originally purchased with the fraudulently obtained SBA EIDL loans.

274.    Defendant 6997 Tremolite Drive was purchased with $435,000.00 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved in money laundering.

### DEFENDANT 2208 ELK LANE, BASALT, COLORADO

275.    On October 6, 2023, 160 Nottingham Rd, #A, Avon, Colorado was sold for $2,105,000.00. 160 Nottingham Rd, #A, Avon, Colorado was originally purchased with $50,000.00 of SBA EIDL loans made to A Prime Real Estate, LLC, and $400,000.00 of SBA EIDL loans made to Lifstyl Real Estate, LLC. On October 10, 2023, $707,735.29 in proceeds from the sale were deposited into Alpine Bank Account 1837. The balance of Alpine Bank Account 1837 prior to the transfer was $401.58.

276.    On October 10, 2023, $27,500.00 was wire transferred from Alpine Bank Account 1837 to Land Title Guarantee Company as the earnest money deposit towards

the purchase of Defendant 2208 Elk Lane. On October 27, 2023, an additional $120,000.00 was wire transferred to Land Title Guarantee Company for the purchase of Defendant 2208 Elk Lane. The sale was completed on October 27, 2023, for a purchase price of $550,000.00. The listed owner of the property is PRIME JMXE LLC. The property was financed with a loan of $509,000.00 from Capital Fund I, LLC.

277.   Defendant 2208 Elk Lane was purchased with $147,500.00 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved in money laundering.

### DEFENDANT 2021 FORD BRONCO VIN: 1FMEE5DP9MLA90163

278.   On approximately December 9, 2021, Joshua Lybolt purchased Defendant 2021 Ford Bronco from AutoNation Ford Littleton. The initial payment on the vehicle was a $2,000.00 charge on Capital One credit card ending in 5720, in the name of Joshua Lybolt.  The 2021 Ford Bronco was financed with a loan from Wells Fargo Auto.

279.   From January 5, 2022 to December 5, 2022, a total of $16,246.80 in payments were made from Bank of America Account 4710 to Wells Fargo Auto for the loan on Defendant 2021 Ford Bronco. Bank of America Account 4710 was primarily funded through transfers from other Bank of America accounts controlled by Joshua Lybolt which received fraudulently obtained SBA EIDL loans.

280.   From February 3, 2023 to October 12, 2023, a total of $11,101.40 in payments were made from Alpine Bank Account 1951 to Wells Fargo Auto for the loan on Defendant 2021 Ford Bronco. As described above, Alpine Bank Account 1951 was primarily funded through account transfers from Alpine Bank Account 1837, which was

primarily funded through account transfers from bank accounts that received fraudulently obtained SBA EIDL loans, the sale or refinance of properties purchased with fraudulently obtained SBA EIDL loans, and short-term rental income from properties that were purchased with fraudulently obtained SBA EIDL loans.

281.    Defendant 2021 Ford Bronco was purchased with at least $29,348.20 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved in money laundering.

## DEFENDANT 2022 CHEVROLET CORVETTE STINGRAY CONVERTIBLE VIN 1G1YB3D47N5121476

282.    On May 16, 2022, Joshua Lybolt purchased Defendant 2022 Chevrolet Convertible for approximately $115,204.84 from Scenic Chevrolet. The downpayment for Defendant 2022 Chevrolet Convertible were two payments totaling $45,000.00 from Bank of America Account 4710 on May 6, 2022 and May 16, 2022. The sources of the $45,000.00 consisted of transfers from Bank of America accounts controlled by Joshua Lybolt which received fraudulently obtained SBA EIDL loans. The defendant vehicle is registered to Joshua David Lybolt.

283.    Approximately $70,419.84 of the purchase price of Defendant 2022 Chevrolet Convertible was financed through GM Financial. From June 6, 2022 to December 5, 2022, a total of $10,144.00 was paid from Bank of America Account 4710 to GM Financial for the auto loan on the defendant vehicle. As described above, the sources of funding for Bank of America Account 4710 primarily consisted of transfers from other Bank of America accounts controlled by Joshua Lybolt that received fraudulently obtained SBA EIDL loans.

284.   From approximately January 10, 2023 to October 12, 2023, a total of $10,100.00 was paid from Alpine Bank Account 1951 to GM Financial for the auto loan on Defendant 2022 Chevrolet Convertible. As described above, Alpine Bank Account 1951 was primarily funded through account transfers from Alpine Bank Account 1837, which was primarily funded through account transfers from bank accounts that received fraudulently obtained SBA EIDL loans, the sale or refinance of properties purchased with fraudulently obtained SBA EIDL loans, and short-term rental income from properties that were purchased with fraudulently obtained SBA EIDL loans.

285.   Defendant 2022 Chevrolet Convertible was purchased with at least $65,244.00 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved in money laundering.

**DEFENDANT 2022 PORSCHE TAYCAN SEDAN VIN WPOAA2Y18NSA16701**

286.   On August 17, 2022, Joshua Lybolt purchased Defendant 2022 Porsche Sedan Taycan from Porsche Littleton for approximately $104,000.00.

287.   The downpayment for Defendant 2022 Porsche Sedan consisted of a check for $58,000.00 from Bank of America account 4710, and $4,000.00 in cash.

288.   The sources of the $58,000.00 downpayment are $60,000.00 in transfers from Bank of America Account 7469 to Bank of America Account 4710 on August 15, 2022, and August 17, 2022. As described above, Bank of America account 7469 received a total of $2,001,900.00 in SBA EIDL loans for Lifestyl Real Estate.

289.   Approximately $42,413.13 of the purchase price of Defendant 2022 Porsche Sedan was financed through Capital One Auto Finance. From January 10, 2023

to October 11, 2023, a total of $9,945.14 was paid from Alpine Bank account 1951 to Capital One Auto Finance for the auto loan on the Defendant 2022 Porsche Sedan. As described above, Alpine Bank Account 1951 was primarily funded through account transfers from Alpine Bank Account 1837, which was primarily funded through account transfers from bank accounts that received fraudulently obtained SBA EIDL loans, the sale or refinance of properties purchased with fraudulently obtained SBA EIDL loans, and short-term rental income from properties that were purchased with fraudulently obtained SBA EIDL loans.

290.    Defendant 2022 Porsche Sedan was purchased with at least $71,945.14 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved in money laundering.

### DEFENDANT 2023 CADILLAC ESCALADE VIN 1GYS4FKL1PR523454

291.    On approximately October 26, 2023, a check for $25,000.00 was sent to John Elway Cadillac from Alpine Bank Account 1837 for the downpayment on Defendant 2023 Cadillac Escalade. Alpine Bank Account 1837 was primarily funded through account transfers from bank accounts that received fraudulently obtained SBA EIDL loans, the sale or refinance of properties purchased with fraudulently obtained SBA EIDL loans, and short-term rental income from properties that were purchased with fraudulently obtained SBA EIDL loans. Defendant 2023 Cadillac Escalade is currently registered to Prime JMXE LLC.

292.    Defendant 2023 Cadillac Escalade was purchased with at least $25,000.00 of proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes

property involved in money laundering.

## FACILITATING CRYPTOCURRENCY IN CRYPTO.COM ACCOUNT 21768155

293.    Between October 2021 through May 2022, twenty-four transactions totaling approximately $184,400 were sent to Crypto.com from the Bank of America account ending in 0720. Fifteen of those transactions totaling approximately $181,500 were deposited into Defendant Crypto.com Account ending in 8155. The remaining nine transactions totaling approximately $2,900 appear to be fees associated with transferring the funds to Crypto.com.

294.    Defendant Crypto.com Account ending in 8155 is held in the name of Joshua David Lybolt. The driver's license, date of birth and contact information support that Defendant Crypto.com Account ending in 8155 belongs to Lybolt.

295.    The Bank of America account ending in 0720 was primarily funded through account transfers from bank accounts that received fraudulently obtained SBA EIDL loans.

296.    Many of these cryptocurrencies were subsequently transferred to the defendant cryptocurrency assets described in more detail below.

## DEFENDANT CRYPTOCURRENCY HELD IN COINBASE ACCOUNT 594304c17d0b3d025a5ff785

297.    Between September 2021 through November 2022, 23 transactions totaling approximately $88,500 were sent to Coinbase from Bank of America accounts ending in 4710 and 6718 and Wells Fargo account ending in 5614. Those transactions minus some transaction fees were deposited into Defendant Coinbase Account ending in f785.

298.    Defendant Coinbase Account ending in f785 is held in the name of Joshua

Lybolt. The driver's license, date of birth and contact information support that the Coinbase account belongs to Lybolt.

299.   Bank of America accounts ending in 4710 and 6718 were primarily funded through account transfers from bank accounts that received fraudulently obtained SBA EIDL loans.

300.   Wells Fargo account ending in 5614 is held by Joshua Lybolt and received the majority of its deposits from Bank of America account ending in 4710, including two deposits around the same time as the two transfers to Defendant Coinbase Account ending in f785.

301.   As set forth above, Defendant Coinbase Account ending in f785 was funded primarily with proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitute property involved in money laundering.

## DEFENDANT CRYPTOCURRENCY AND NFTS HELD IN ADDRESS 0xAD71a7c34de9C27224386DAf370Ad4BdE7f7575D

302.   Between October 2021 through May 2022, ten ether (ETH) transactions totaling approximately $70,700 (22.378345 ETH) were sent from Defendant Crypto.com Account ending in 8155 to Defendant Cryptocurrency at address ending in 575D.

303.   Defendant Cryptocurrency at Address ending in 575D appears to be a private wallet.

304.   Between October 2021 through June 2023, Defendant Cryptocurrency at Address ending in 575D sent 20.896145 ETH (approximately $60,900) to Defendant Cryptocurrency at Address ending in 0580, which per open-source research on Etherscan.io is labeled as lybolt.eth.

305.   Lybolt's Crypto.com account also sent approximately $97,600 (234.38116 Binance Coin (BNB)) funds to Defendant Cryptocurrency at Address ending in 0580.

306.   Open-source research shows that Defendant Cryptocurrency at Address ending in 575D received a total of approximately 23.236942 ETH between January 1, 2020 through January 1, 2024.

307.   The majority of that ETH (22.378344 ETH) came from Lybolt's Crypto.com account which was primarily funded by Bank of America account ending in 0720, which was primarily funded through account transfers from bank accounts that received fraudulently obtained SBA EIDL loans.

308.   Defendant Cryptocurrency at Address ending in 575D was also used to purchase approximately $6,100 in NFTs.

309.   Given that the primary source of funding for Defendant Cryptocurrency at Address ending in 575D came from Lybolt's Crypto.com account and that the majority of funds sent from Defendant Cryptocurrency at Address ending in 575D go to Defendant Cryptocurrency at Address ending in 0580, lybolt.eth, Defendant Cryptocurrency at address ending in 575D was funded primarily with proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitute property involved in money laundering.

### DEFENDANT CRYPTOCURRENCY AND NFTS HELD IN ADDRESS 0xbd08Bdea67fDB84dE8223513F70D9b9bE3C30580

310.   Between January 2022 through April 2022, nine Binance coin (BNB) transactions totaling approximately $97,600 (234.38116 BNB) were sent from Defendant Crypto.com Account ending in 8155 to Defendant Cryptocurrency Address ending in 0580.

311.     Between October 2021 through December 2022, Defendant Coinbase Account ending in f785 sent approximately $43,500 worth of ETH to Defendant Cryptocurrency address ending in 0580, $4,900 worth of Binance USD (BUSD) to Defendant Cryptocurrency address ending in 0580, and $9,600 worth of Avalanche (AVAX) to Defendant Cryptocurrency Address ending in 0580.

312.     Defendant Cryptocurrency address ending in 0580 appears to be a private wallet.

313.     Per open-source research on Etherscan.io, Defendant Cryptocurrency Address ending in 0580 is labeled as lybolt.eth.

314.     Defendant Cryptocurrency Address ending in 0580 conducted at least eighteen transactions on OpenSea.io to purchase NFTs totaling approximately $40,000. The transactions with OpenSea were conducted in the OpenSea account for username FLEX_GOD that was associated with the email address lybolt@gmail.com, which is the same email address listed in the account profile information for Defendant Coinbase Account ending in f785.

315.     Given the lybot.eth label for Defendant Cryptocurrency Address ending in 0580, the amount of funds sent from Lybolt's Defendant Crypto.com Account ending in 8155 and Defendant Coinbase Account ending in f785, and the use of funds from Defendant Cryptocurrency Address ending in 0580 to purchase NFTs through an OpenSea account registered to lybolt@gmail.com, there is a reasonable basis to believe Defendant Cryptocurrency address ending in 0580 was funded primarily with proceeds traceable to the fraudulently obtained SBA EIDL loans, and constitutes property involved

in money laundering.

### DEFENDANT 2021 YAMAHA RAPTOR MODEL NUMBER YFM09RYXLW

316.    On October 9, 2020, Joshua Lybolt purchased a new 2021 Yamaha Raptor with serial number YFM09RYXLW from Tri City Cycle, 3675 Clydesdale Parkway, Loveland, Colorado 80538, for approximately $4,197.85. The payment was made from Bank of America account 4710. The source of the payment was derived from funds fraudulently obtained from SBA EIDL loans.

### DEFENDANT MISCELLANEOUS PAINTINGS LISTED IN ATTACHMENT A

317.    On December 31, 2021, Joshua and Magdalena Lybolt purchased three original paintings by Straus Topher at the Vail International Gallery located at 100 East Meadow Drive #17, Vail, Colorado.

318.    The first painting was titled, "Vail" and it was a dye sublimated print on an aluminum panel 30" x 60". The purchase price was approximately $4,900.00.

319.    The second painting was titled, "Kirkjufell Iceland." It was also a dye sublimated print on an aluminum panel 30" x 60". The purchase price was $3,600.00.

320.    The third painting was titled, "Fresh Tracks."  It was also a dye sublimated print on an aluminum panel 30" x 60". The purchase price was also $3,600.00.

321.    The first three paintings were paid for with two payments consisting of $10,148.95 from Bank of America account 0720 and a $1,000.00 payment from Bank of America account 6183. A discount was given to the Lybolts from the Vail International Galley owners in the amount of $1,815.00. The source of the payment was derived from funds fraudulently obtained from SBA EIDL loans.

322.    On July 15, 2022, Joshua and Magdalena Lybolt purchased, "Peaks" from Vail International Gallery for $3,900.00 with a $600.00 discount for a total purchase price of $3,593.70.  This payment was made from Bank of America account 6718.

323.    On February 13, 2023, Joshua Lybolt purchased two original paintings from Straus Topher directly from the artist in the amount of $15,003.63. The first painting was titled, "Aspen Lights," and the second painting was titled, "Crystal Haze."

324.    The payment for the two paintings was made from Joshua Lybolt's Capital One Credit Card account ending in 0363. The source of this payment was derived from funds fraudulently obtained from the SBA EIDL loans.

325.    As described above, all four paintings purchased from the Vail International Gallery and both of the original paintings purchased from Straus Topher directly were purchased with proceeds traceable to the fraudulently obtained SBA EIDL loans.

326.    On January 3, 2022, Joshua Lybolt made a partial payment to Raitman Art Gallery at 223 Gore Creek Drive in Vail, Colorado, 81657, in the amount of $1,000.00 for the purchase of two paintings by the artist Tracy Felix. The payment was made from the Bank of America Account 0720.

327.     On January 10, 2022, a payment in the amount of $5,743.75 was made from Bank of America account 0610 for the purchase of "Aspen Mountain" an original painting by Tracy Felix.

328.    On April 20, 2022, a payment in the amount of $2,967.25 was made from Bank of America account 6718 for the painting titled, "Peaceful Lake."

329.    Therefore, three payments in the total amount of $9,711.00 were made from

three different accounts in the custody and control of Joshua Lybolt to purchase the two original paintings done by Tracy Felix.

330.    The source of these payments were derived from funds fraudulently obtained from the SBA EIDL loans.

331.    On February 11, 2022, Joshua Lybolt purchased a painting by Craig Alan titled, "Marilyn," in the amount of $9,750.00 from Royal Street Fine Art at 205 South Mill Street, Suite 211 in Aspen, Colorado 81611.

332.    The payment was made from Bank of America account 0720. The source of this payment was derived from funds fraudulently obtained from the SBA EIDL loans.

333.    On July 25, 2022, Joshua Lybolt purchased a framed print titled, "Million Dollar View" in the amount of $5,000.00 from The Shag Store at 745 North Palm Canyon Drive in Palm Springs, California, 92262.  The payment was made from Bank of America account 6718.  The source of this payment was derived from funds fraudulently obtained from the SBA EIDL loans.

334.    On February 19, 2023, Joshua Lybolt purchased a frame print titled, "The Mammoth Martini," in the amount of $1,900.00 from The Shag Store. The payment was made from Capital One Credit Card 5720. The source of this payment was derived from funds fraudulently obtained from the SBA EIDL loans.

335.    On April 16, 2023, Joshua Lybolt purchased a framed print titled, "86 In The Shade," in the amount of $1,500.00 from the Shag Store. The payment came from an unknown source but due to the fact Joshua Lybolt has no other source of income besides the SBA EIDL loans and short-term income derived from his fraudulent purchased

properties, this transaction is subject to forfeiture.

336.    On October 5, 2022, Joshua Lybolt purchased a painting (hand embellished Giclee) titled, "Blue Moon," at Holle Fine Art Gallery at 839 Front Street in Lahaina, Hawaii, 96761, in the amount of $2,768.80. The payment was made from Bank of America account 6718.  The source of this payment was derived from funds fraudulently obtained from the SBA EIDL loans.

337.    On May 9, 2022, Joshua Lybolt purchased two mixed media southwest paintings from Carre d' Artist Art Gallery at 336 State Route 179, Tlaquepaque Arts and Crafts Village in Sedona, Arizona, 86336, in the amount of $1,976.16. The payment was made from Bank of America account 6718.  The source of this payment was derived from funds fraudulently obtained from the SBA EIDL loans.

**DEFENDANT MISCELLANEOUS HERITAGE VINTAGE SPORT AUCTIONS ITEMS LISTED IN ATTACHMENT B**

338.    Approximately eighteen payments were made from bank accounts or credit cards in the custody and control of Joshua Lybolt to Heritage Vintage Sport Auctions for the purchases of fine arts, sports memorabilia, comics and comic art, and movie poster collectibles.  The payments were as follows:

a)  On April 1, 2022 in the amount of $10,918.12,

b)  On May 31, 2022 in the amount of $22,258.50,

c)  On July 11, 2022 in the amount of $853.14,

d)  On July 22, 2022 in the amount of $4,624.74,

e)  On July 25, 2022 in the amount of $ 1,851.89,

f)   On July 25, 2022 in the amount of $336.36,

g)  On August 2, 2022 in the amount of $85.09,

h)  On October 28, 2022 in the amount of $2,691.67,

i)   On October 28, 2022 in the amount of $1,825.61,

j)   On October 28, 2022 in the amount of $157.20,

k)  On November 22, 2022 in the amount of $1,823.77,

l)   On December 20, 2022 in the amount of $890.20,

m) On February 6, 2023 in the amount of $3,158.21,

n)  On February 6, 2023 in the amount of $282.13,

o)  On February 10, 2023, in the amount of $1,602.35,

p)  On February 28, 2023, in the amount of $6,682.21,

q)  On March 22, 2023 in the amount of $98.57, and

r)   On March 23, 2023 in the amount of $1,088.24.

339.    The source of the total payments in the amount of $61,228.20 were derived from funds fraudulently obtained from SBA EIDL loans.

<u>CONCLUSION</u>

Based on the facts and circumstances above, there is reasonable cause to believe that the defendant assets were obtained with fraudulently obtained PPP and EIDL funds and are subject to forfeiture.

VERIFICATION OF CHRISTINE NORMAN
TASK FORCE OFFICER, DRUG ENFORCEMENT ADMINISTRATION

I, Special Agent, Christine Norman, hereby state and aver under the pains and penalties

of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and

information contained therein are true.

CHRISTINE NORMAN
Special Agent, Federal Bureau of
Investigation

75

## FIRST CLAIM FOR RELIEF

340.   The Plaintiff repeats and incorporates by reference the paragraphs above.

341.   By the foregoing and other acts, Defendant Real Property Located at 760 West Beaver Creek Boulevard, Apt. 111, Avon, Colorado, constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957. Therefore, Defendant Real Property Located at 760 West Beaver Creek Boulevard, Apt. 111, Avon, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF

342.   The Plaintiff repeats and incorporates by reference the paragraphs above.

343.   By the foregoing and other acts, Defendant Real Property Located at 760 West Beaver Creek Boulevard, Apt. 111, Avon, Colorado, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349. Therefore, Defendant Real Property Located at 760 West Beaver Creek Boulevard, Apt. 111, Avon, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR RELIEF

344.   The Plaintiff repeats and incorporates by reference the paragraphs above.

345.   By the foregoing and other acts, Defendant Real Property Located at 35 Lower Woodbridge Road, #P157, Snowmass Village, Colorado, constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.  Therefore, Defendant Real Property Located at 35 Lower Woodbridge Road, #P157, Snowmass Village, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## FOURTH CLAIM FOR RELIEF

346.    The Plaintiff repeats and incorporates by reference the paragraphs above.

347.    By the foregoing and other acts, Defendant Real Property Located at 35 Lower Woodbridge Road, #P157, Snowmass Village, Colorado, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant Real Property Located at 35 Lower Woodbridge Road, #P157, Snowmass Village, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## FIFTH CLAIM FOR RELIEF

348.    The Plaintiff repeats and incorporates by reference the paragraphs above.

349.    By the foregoing and other acts, Defendant Real Property Located at 35 Upper Woodbridge Road, #17AB, Snowmass Village, Colorado, constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.  Therefore, Defendant Real Property Located at 35 Upper Woodbridge Road, #17AB, Snowmass Village, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## SIXTH CLAIM FOR RELIEF

350.    The Plaintiff repeats and incorporates by reference the paragraphs above.

351.    By the foregoing and other acts, Defendant Real Property Located at 35 Upper Woodbridge Road, #17AB, Snowmass Village, Colorado, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant Real Property Located at 35 Upper Woodbridge Road, #17AB, Snowmass Village, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## SEVENTH CLAIM FOR RELIEF

352.    The Plaintiff repeats and incorporates by reference the paragraphs above.

353.    By the foregoing and other acts, Defendant Real Property Located at 254 Wren Court, #204, Basalt, Colorado, constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.  Therefore, Defendant Real Property Located at 254 Wren Court, #204, Basalt, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## EIGHTH CLAIM FOR RELIEF

354.    The Plaintiff repeats and incorporates by reference the paragraphs above.

355.    By the foregoing and other acts, Defendant Real Property Located at 254 Wren Court, #204, Basalt, Colorado, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant Real Property Located at 254 Wren Court, #204, Basalt, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## NINTH CLAIM FOR RELIEF

356.    The Plaintiff repeats and incorporates by reference the paragraphs above.

357.    By the foregoing and other acts, Defendant Real Property Located at 6997 Tremolite Drive, Castle Rock, Colorado, and all appurtenances, attachments, and furnishings thereto, constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.  Therefore, Defendant Real Property Located at 6997 Tremolite Drive, Castle Rock, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## TENTH CLAIM FOR RELIEF

358.    The Plaintiff repeats and incorporates by reference the paragraphs above.

359.   By the foregoing and other acts, Defendant Real Property Located at 6997 Tremolite Drive, Castle Rock, Colorado, and all appurtenances, attachments, and furnishings thereto, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant Real Property Located at 6997 Tremolite Drive, Castle Rock, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## ELEVENTH CLAIM FOR RELIEF

360.   The Plaintiff repeats and incorporates by reference the paragraphs above.

361.   By the foregoing and other acts, Defendant Real Property Located at 2208 Elk Lane, Basalt, Colorado, constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.  Therefore, Defendant Real Property Located at 2208 Elk Lane, Basalt, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## TWELFTH CLAIM FOR RELIEF

362.   The Plaintiff repeats and incorporates by reference the paragraphs above.

363.   By the foregoing and other acts, Defendant Real Property Located at 2208 Elk Lane, Basalt, Colorado, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant Real Property Located at 2208 Elk Lane, Basalt, Colorado, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## THIRTEENTH CLAIM FOR RELIEF

364.   The Plaintiff repeats and incorporates by reference the paragraphs above.

365.   By the foregoing and other acts, Defendant 2021 Ford Bronco, VIN: 1FMEE5DP9MLA90163, constitutes property involved in a transaction or attempted

transaction in violation of 18 U.S.C. § 1957.  Therefore, Defendant 2021 Ford Bronco, VIN: 1FMEE5DP9MLA90163, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## FOURTEENTH CLAIM FOR RELIEF

366.    The Plaintiff repeats and incorporates by reference the paragraphs above.

367.    By the foregoing and other acts, Defendant 2021 Ford Bronco, VIN: 1FMEE5DP9MLA90163, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant 2021 Ford Bronco, VIN: 1FMEE5DP9MLA90163, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## FIFTEENTH CLAIM FOR RELIEF

368.    The Plaintiff repeats and incorporates by reference the paragraphs above.

369.    By the foregoing and other acts, Defendant 2022 Chevrolet Corvette Stingray Convertible, VIN: 1G1YB3D47N5121476, constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957.   Therefore, Defendant 2022 Chevrolet Corvette Stingray Convertible, VIN: 1G1YB3D47N5121476, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## SIXTEENTH CLAIM FOR RELIEF

370.    The Plaintiff repeats and incorporates by reference the paragraphs above.

371.    By the foregoing and other acts, Defendant 2022 Chevrolet Corvette Stingray Convertible, VIN: 1G1YB3D47N5121476, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant 2022 Chevrolet Corvette Stingray Convertible, VIN: 1G1YB3D47N5121476, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## SEVENTEENTH CLAIM FOR RELIEF

372.    The Plaintiff repeats and incorporates by reference the paragraphs above.

373.    By the foregoing and other acts, Defendant 2022 Porsche Taycan Sedan, VIN: WPOAA2Y18NSA16701, constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957.  Therefore, Defendant 2022 Porsche Taycan Sedan, VIN: WPOAA2Y18NSA16701, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## EIGHTEENTH CLAIM FOR RELIEF

374.    The Plaintiff repeats and incorporates by reference the paragraphs above.

375.    By the foregoing and other acts, Defendant 2022 Porsche Taycan Sedan, VIN: WPOAA2Y18NSA16701, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant 2022 Porsche Taycan Sedan, VIN: WPOAA2Y18NSA16701, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## NINETEENTH CLAIM FOR RELIEF

376.    The Plaintiff repeats and incorporates by reference the paragraphs above.

377.    By the foregoing and other acts, Defendant 2023 Cadillac Escalade, VIN: 1GYS4FKL1PR523454, constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957.   Therefore, Defendant 2023 Cadillac Escalade, VIN: 1GYS4FKL1PR523454, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

## TWENTIETH CLAIM FOR RELIEF

378.    The Plaintiff repeats and incorporates by reference the paragraphs above.

379.    By the foregoing and other acts, Defendant 2023 Cadillac Escalade, VIN:

1GYS4FKL1PR523454, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant 2023 Cadillac Escalade, VIN: 1GYS4FKL1PR523454, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

### TWENTY-FIRST CLAIM FOR RELIEF

380.   The Plaintiff repeats and incorporates by reference the paragraphs above.

381.   By the foregoing and other acts, Defendant Cryptocurrency held in Coinbase Account Address 594304c17d0b3d025a5ff785 constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957.  Therefore, Defendant Cryptocurrency in Coinbase Account 594304c17d0b3d025a5ff785 is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

### TWENTY-SECOND CLAIM FOR RELIEF

382.   The Plaintiff repeats and incorporates by reference the paragraphs above.

383.   By the foregoing and other acts, Defendant Cryptocurrency held in Coinbase Account Address 594304c17d0b3d025a5ff785 is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349. Therefore, Defendant Cryptocurrency and NFTS held in Coinbase Account Address 594304c17d0b3d025a5ff785 is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

### TWENTY-THIRD CLAIM FOR RELIEF

384.   The Plaintiff repeats and incorporates by reference the paragraphs above.

385.   By the foregoing and other acts, Defendant Cryptocurrency and NFTS held in Address 0xAD71a7c34de9C27224386DAf370Ad4BdE7f7575D constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C.

§1957.  Therefore, Defendant Cryptocurrency at Address 0xAD71a7c34de9C27224386DAf370Ad4BdE7f7575D is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

**TWENTY-FOURTH CLAIM FOR RELIEF**

386.    The Plaintiff repeats and incorporates by reference the paragraphs above.

387.    By the foregoing and other acts, Defendant Cryptocurrency and NFTS held in Address 0xAD71a7c34de9C27224386DAf370Ad4BdE7f7575D is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant Cryptocurrency at Address 0xAD71a7c34de9C27224386DAf370Ad4BdE7f7575D is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

**TWENTY-FIFTH CLAIM FOR RELIEF**

388.    The Plaintiff repeats and incorporates by reference the paragraphs above.

389.    By the foregoing and other acts, Defendant Cryptocurrency and NFTS held in Address 0xbd08Bdea67fDB84dE8223513F70D9b9bE3C30580 constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957.  Therefore, Defendant Cryptocurrency at Address 0xbd08Bdea67fDB84dE8223513F70D9b9bE3C30580 is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

**TWENTY-SIXTH CLAIM FOR RELIEF**

390.    The Plaintiff repeats and incorporates by reference the paragraphs above.

391.    By the foregoing and other acts, Defendant Cryptocurrency and NFTS held in Address 0xbd08Bdea67fDB84dE8223513F70D9b9bE3C30580 is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and

1349.  Therefore, Defendant Cryptocurrency at Address 0xbd08Bdea67fDB84dE8223513F70D9b9bE3C30580 is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## TWENTY-SEVENTH CLAIM FOR RELIEF

392.    The Plaintiff repeats and incorporates by reference the paragraphs above.

393.    By the foregoing and other acts, Defendant 2021 Yamaha Raptor Model Number YFM09RYXLW, is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant 2021 Yamaha Raptor Model Number YFM09RYXLW, is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## TWENTY-EIGHTH CLAIM FOR RELIEF

394.    The Plaintiff repeats and incorporates by reference the paragraphs above.

395.    By the foregoing and other acts, Defendant Miscellaneous Paintings Listed in Attachment A is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant Miscellaneous Paintings Listed in Attachment A are forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

## TWENTY-NINTH CLAIM FOR RELIEF

396.    The Plaintiff repeats and incorporates by reference the paragraphs above.

397.    By the foregoing and other acts, Defendant Miscellaneous Heritage Vintage Sport Auctions Items Listed in Attachment B is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349. Therefore, Defendant Miscellaneous Heritage Vintage Sport Auctions Items Listed in Attachment B are forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

### THIRTIETH CLAIM FOR RELIEF

398.    The Plaintiff repeats and incorporates by reference the paragraphs above.

399.    By the foregoing and other acts, Defendant Approximately $242,962.96 in Funds from Alpine Bank Account 8911911837 constitute property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956.  Therefore, Defendant Approximately $242,962.96 in Funds from Alpine Bank Account 8911911837 is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

### THIRTY-FIRST CLAIM FOR RELIEF

400.    The Plaintiff repeats and incorporates by reference the paragraphs above.

401.    By the foregoing and other acts, Defendant Approximately $242,962.96 in Funds from Alpine Bank Account 8911911837 is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349.  Therefore, Defendant Approximately $242,962.96 in Funds from Alpine Bank Account 8911911837 is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

### THIRTY-SECOND CLAIM FOR RELIEF

402.    The Plaintiff repeats and incorporates by reference the paragraphs above.

403.    By the foregoing and other acts, Defendant Approximately $24,384.41 in Funds from Alpine Bank Account 8911911951 constitute property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956.  Therefore, Defendant Approximately $24,384.41 in Funds from Alpine Bank Account 8911911951 is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(A).

### THIRTY-THIRD CLAIM FOR RELIEF

404.    The Plaintiff repeats and incorporates by reference the paragraphs above.

405.    By the foregoing and other acts, Defendant Approximately $24,384.41 in

Funds from Alpine Bank Account 8911911951 is property which constitutes or is derived from property traceable to a violation of 18 U.S.C. §§ 1343 and 1349. Therefore, Defendant Approximately $24,384.41 in Funds from Alpine Bank Account 8911911951 is forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States prays for an entry of final order of forfeiture for the defendant assets in favor if the United States, that the United States be authorized to dispose of the defendant assets in accordance with law, and that the Court enter a finding of probably cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 1st day of March, 2024.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: s/*Tonya S. Andrews*
Tonya S. Andrews
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0402
E-mail: Tonya.Andrews@usdoj.gov
*Attorney for Plaintiff*